**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDWARD "COACH" WEINHAUS, et al.,

Plaintiffs,

v.

BOARD OF EDUCATION OF TOWNSHIP
HIGH SCHOOL DISTRICT 113, et al.,
Defendants.

Case No.: 1:25-cv-14662

Judge Jorge L. Alonso

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BOARD OF
EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DR. CHALA
HOLLAND, DON MCCORD AND LANE LINDER'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Plaintiffs Edward Weinhaus, Children of the Court, and Judiciocracy, LLC, allege that the

Board of Education of Township High School District 113 (the "Board"), Superintendent Dr.

Chala Holland, and two employees—Dean of Students Don McCord and Head of Security Lane

Linder—violated Plaintiffs' rights under the First and Fourteenth Amendments and Illinois

Constitution when Weinhaus was asked to stay away from the student section of the stands during

a football game, and later to leave the game after a student complained about him. The Amended

Complaint should be dismissed under Federal Rule Civil Procedure 12(b)(6).

## I. Factual Background

Township High School District 113 is a public school district that operates Deerfield High

School and Highland Park High School ("HPHS"). Am. Compl. ¶ 11. Two of Weinhaus's children

currently attend HPHS. Am. Compl. ¶ 33. Weinhaus alleges that he serves as the Executive

Director of Children of the Court, a non-profit "committed to reforming America's legal system,"

and as the CEO of Judiciocracy, LLC, a news organization providing "coverage of misconduct in

the justice system." Am. Compl. ¶¶ 1–9. Weinhaus attended multiple events at HPHS from at least

2017 through 2025 and was never previously asked to leave a HPHS event. Am. Compl. ¶¶ 35–43.

Weinhaus alleges that in 2018, a false DCFS complaint was filed against him, which prompted HPHS security to "pressure" him not to attend events, put him on a "watch list," and accompany him at school events, eventually causing him to withdraw his older sons from enrollment at HPHS in 2019. Am. Compl. ¶¶ 44–57. Weinhaus subsequently asked HPHS to remove him from the "watch list" after he was awarded primary residential custody of his second oldest son, and HPHS complied. Am. Compl. ¶ 57. Weinhaus alleges that he was re-added to a "watch list" in 2023 in retaliation for "observing HPHS Security." Am. Compl. ¶ 60. In spring 2023, he alleges that he reported concerns about security to the Superintendent, resulting in several staff who he recommended being relieved or retained. Am. Compl. ¶ 72–75. In spring 2025, Weinhaus was quoted in a local news story about a student placing recording devices in school restrooms at HPHS and a local middle school. Am. Compl. ¶¶ 77–81.

On October 10, 2025, Weinhaus purchased a $6 ticket to attend the homecoming football game at HPHS. Am. Compl. ¶ 26. Sometime during the second quarter, Weinhaus alleges that he was "accosted" by a female student identified as "MFG." Am. Compl. ¶ 108. According to Weinhaus, he and MFG had the following exchange:

> **MFG:** Can I help you?
> **Weinhaus:** Would you like to?
> **MFG:** No. I would not. What are you doing here?
> **Weinhaus:** Watching the game and seeing the students.
> **MFG:** Why?
> **Weinhaus:** Because I want to.
> **MFG:** Don't you think that's creepy?
> **Weinhaus:** Nope.
> **MFG:** Well I do.
> **Weinhaus:** Well, I'll ask again. Would you like to help me?
> **MFG:** No, I'm going to get you kicked out of here.

Am. Compl. ¶ 110. Weinhaus alleges that MFG then gave him the finger and walked away. Am.

Compl. ¶ 111. Thereafter, Weinhaus was approached by Dean Don McCord, who he knew as he coached several of his children in basketball. Am. Compl. ¶¶ 116–18. McCord asked Weinhaus to leave the game, but he refused. McCord told him not to sit in the stands. Am. Compl. ¶¶ 119–24. Weinhaus stayed and watched the halftime show, after which much of the crowd, including Weinhaus's children, left the game. Am. Compl. ¶ 137. Midway through the third quarter, McCord again approached Weinhaus and demanded that he leave the game or be arrested for trespassing. Am. Compl. ¶¶ 139–44. Weinhaus asked why, and McCord stated that it was because Weinhaus's children had left, and a student reported she was uncomfortable because Weinhaus was reportedly following her. Am. Compl. ¶¶ 145–46. After further back and forth with McCord, the head of security, Lane Linder, and a Highland Park Police officer, Weinhaus agreed to leave the game after the third quarter. Am. Compl. ¶ 160. McCord specifically assured Weinhaus that he could return to attend other school events. Am. Compl. ¶ 164. After Weinhaus left the game, he remained outside the fence, where he (allegedly acting on behalf of Judiciocracy and Children of the Court) observed police officers and interviewed departing students. Am. Compl. ¶¶ 168, 179–81.

Plaintiffs subsequently filed a five-count complaint in Lake County Circuit Court seeking damages and injunctive relief, which Defendants removed to this Court. The Amended Complaint is the operative pleading. Counts I and II are brought under 42 U.S.C § 1983 for alleged retaliation in violation of Plaintiffs' rights under the First Amendment, Fourteenth Amendment, and Illinois Constitution. Am. Compl. ¶¶ 205–15, 216–26. Counts III and IV are due process claims brought under § 1983 and the Illinois Constitution. Am. Compl. ¶¶ 227–35, 236–44. Count V is a § 1983 claim alleging interference with Weinhaus's parental rights. Am. Compl. ¶¶ 245–65.

## II. Argument

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of a complaint that fails to state

a claim upon which relief can be granted. In ruling on such a motion, the Court accepts as true all well-pleaded factual allegations and construes the complaint in the light most favorable to the plaintiff but need not accept as true "statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021) (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). To survive a motion to dismiss, a complaint must state sufficient facts or inferential allegations to support every material element necessary for recovery under the relevant legal theory. *Papapetropoulous v. Milwaukee Transp. Serv., Inc.*, 795 F.2d 591, 594 (7th Cir. 1986). Moreover, "a plaintiff can plead himself out of court by alleging facts which show that he has no claim." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995).

### B. Official Capacity Claims Against Dr. Holland, McCord & Linder Should Be Dismissed

Plaintiffs sue Dr. Holland in her official capacity only and sue Dean McCord and Linder in both their official and individual capacities. With respect to Dr. Holland, there are no allegations that she personally engaged in any action affecting Plaintiffs' rights. Broad, conclusory statements that knew or should have known that Plaintiffs were attending Homecoming—with no factual support that Dr. Holland was in attendance or how she would have otherwise been aware of Weinhaus's attendance—cannot support a viable claim. *See* Am. Compl. ¶¶ 25, 34, 176. Further, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). If a plaintiff brings suit against a government entity, any claim against an officer of that entity in his or her official capacity is redundant and should be dismissed. *See Schmidling v. City of Chicago*, 1 F.3d 494, 495 n.1 (7th Cir. 1993). That Plaintiffs seek injunctive relief does not change this. *See Comer v. Hous. Auth. of City of Gary, Ind.*, 615 F. Supp. 2d 785, 789 (N.D. Ind. 2009). Dr. Holland should therefore be dismissed as a defendant, and any official capacity claims against Dean McCord and

Linder should be dismissed, as the claims are redundant of those against the Board itself.

### C. Plaintiffs Fail to State a *Monell* Claim Against the Board

Section 1983 provides a civil remedy against any "person" who violates a plaintiff's federal civil rights while acting under color of state law. 42 U.S.C. § 1983; *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiffs must establish the deprivation of an underlying substantive right, the existence of an official policy or custom, and that this policy or custom was the moving force behind the deprivation of their substantive rights. *See Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). "To establish an official policy or custom, plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2007). Plaintiffs attempt to allege that any injury was caused by multiple officials with final policymaking authority, a widespread custom, and because the Board has failed to adequately train employees.

To start, Plaintiffs do not allege that the decision to place Weinhaus on a "watch list" was made by a school official with final policymaking authority. Am. Compl. ¶¶ 61–66. "Policymaking authority is not simply the power to make decisions; it is broader and must encompass the power to speak for the local government on official policy." *Richardson v. Bd. of Educ. of Elgin Sch. Dist.*, No. 24-CV-8243, 2025 WL 1707801, at *3 (N.D. Ill. June 18, 2025) (citation omitted). "[W]hether a particular official has 'final policymaking authority' is a question of state law," *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988), and in Illinois, "only the board of education and those who it delegates to act on its behalf have the final policymaking authority," *Richardson,* 2025 WL 1707801 at *3 (citing *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998)). The allegation that Dr. Holland, McCord, and Linder had

policymaking authority with respect to any alleged "watch list" or attendance restriction is conclusory and unsupported by case law, as "management employees of a school district such as the principal or superintendent do not have final policymaking authority." *Richardson*, 2025 WL 1707801 at *3*; see, e.g.*, *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) ("Nothing in the School Code allows us to infer that a disciplinary dean has been delegated policymaking authority."); *see also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019) (writing that there is no respondeat superior liability under § 1983). No allegation allows a reasonable inference that Dr. Holland, McCord, or Linder had the authority to act as a policymaker on behalf of the Board in this case.

Also, the contention that there is a "policy of restricting access" for those who have shared criticisms is not enough to support liability against the Board because any "policy" has only affected Plaintiffs. Am. Compl. ¶ 66. To allege a widespread policy or custom, the plaintiff must allege others were impacted by the same policy that caused his injury. *Big Woods BBQ LLC v. Moore*, No. 24 CV 11776, 2025 WL 1755727, at *3 (N.D. Ill. June 25, 2025). Allegations of "a few sporadic examples of an improper behavior" do not suffice. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Weinhaus was placed on the referenced "watch list" years ago, not as a result of any engagement in protected First Amendment activity, but due to a DCFS complaint made against him. Am. Compl. ¶¶ 46–52. Since that time, Weinhaus has attended multiple events without incident, restriction, or exclusion. Plaintiffs do not allege a single instance in which he himself was deprived of access due to this retaliatory "watch list." Even assuming that the list included others, there are no allegation that those individuals—or Weinhaus himself—were previously placed on the list because of an exercise of First Amendment rights. *See e.g.*, *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (finding no widespread policy when

alleged incidents did not include "the constitutional violation at the heart of [the] complaint"). As Plaintiffs fail to identify any other instances of alleged retaliatory exclusion from school events, they do not state a claim for *Monell* liability based upon a widespread policy or custom.

Lastly, Plaintiffs' failure-to-train theory similarly fails as is "available only where the school district's failure to train its employees in a relevant respect evidences a deliberate indifference." *S.J. v. Persps. Charter Sch.*, 685 F. Supp. 2d 847, 858 (N.D. Ill. 2010). A school district generally cannot be held liable on this basis absent a clear, recurrent duty or a pattern of similar violations. *See Cornfield*, 991 F.2d at 1327. Once again, an isolated incident is insufficient to establish deliberate indifference and cannot support liability due to a failure to train. *Doe v. Champaign Cmty. Unit 4 Sch. Dist.*, No. 11-CV-3355, 2013 WL 3712350, at *6 (C.D. Ill. July 12, 2013) ("Plaintiffs in this case have failed to state a claim that establishes deliberate indifference by citing only this single incident of an alleged constitutional violation."). Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed.

### D.  Plaintiffs Fail to Allege Violations of their Free Speech Rights

Counts I and II allege that Defendants retaliated against Weinhaus, Judiciocracy, and Children of the Court in violation of their First Amendment rights under both the federal and state constitutions. Plaintiffs allege that Weinhaus was asked to limit his movement and later to leave the football game in retaliation for speech Weinhaus made previously to the media about security concerns at HPHS, Am. Compl. ¶ 198, and because Defendants are attempting to "get even" with Weinhaus for lodging a false claim report in a government database, Am. Compl. ¶ 199.

To state a claim for retaliation, a plaintiff must establish three elements: (1) "he must show he engaged in protected First Amendment activity," (2) "he must show an adverse action was taken against him," and (3) "he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). There is no allegation

7

that Judiciocracy or Children of the Court engaged in any protected activity. Only Weinhaus is alleged to have spoken to the *Lake County Gazette* in February 2025, shared security concerns, or ensured that the record of a false claim reported by the District remained in the government database. *See* Am. Compl. ¶¶ 46–47, 72–75 ("Coach Alerts the Administration to Security Failings"), 79–82, 157 ("Coach's public comments in February and March 2025 (made to the *Lake County Gazette*)"). While the Amended Complaint alleges that "Judiciocracy's attendance was in pursuit of its investigation of the Highland Park Police Department," and Children of the Court "had multiple beneficiaries of parental Pledges attending," Am. Compl. ¶¶ 103, 104, nothing establishes that they engaged in First Amendment protected activity before Weinhaus left, much less that the Board was aware of that activity or took action against Weinhaus because of it.

To support the second element, Plaintiffs must allege facts supporting an inference that they suffered adverse action "likely [to] deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Courts may determine whether alleged conduct is enough to deter future protected activity as a matter of law where an asserted injury is minimal. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."); *see also Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) ("Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law."). The allegations do not meet this standard. Weinhaus was asked to stay away from the stands for part of a high school football game and then missed the last quarter of the game after a female student (who told him directly that she found him "creepy") complained that he was making her uncomfortable. Am. Compl. ¶¶ 110, 146.

8

The Seventh Circuit has concluded that minor actions taken while "respond[ing] to disruptive parents and spectators as a matter of course," are not enough to establish a claim of First Amendment retaliation. *Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008). These types of events "predictably occur in high schools around the nation" and do not support a viable claim. *Id.* The allegations here establish only a type of "generic dispute" between a parent and school officials that does not amount to an adverse action. *Id.*; *see also Cannon v. City of Anna, Ill.*, No. 3:22-CV-981-NJR, 2023 WL 2349344, at *13 (S.D. Ill. Mar. 3, 2023) ("A mere ban on attending sporting events at a public school is not enough to state a claim for a First Amendment violation."). That is so here, as Plaintiffs expressly acknowledge that Weinhaus was told that he could attend future events. There is no limitation on Plaintiffs' First Amendment rights.

### E. Plaintiffs Fail to Allege Any Due Process Claim

Counts III and IV allege violations of the Fourteenth Amendment for Defendants' purported restriction on "where Plaintiff could be at Homecoming without any objective reason allowable by law." Am. Compl. ¶¶ 182, 191. Both substantive and procedural due process claims require a plaintiff to identify a constitutionally protected right to liberty or property. *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019); *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 752 (7th Cir. 2012). The constitution "does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981). "A school may ban a person, including a parent, from going to school property . . . without violating any fundamental right to go onto or access school property." *Mejia v. Holt Public Sch.*, 2002 WL 1492205 (W.D. Mich. 2002). The operative pleading fails to establish how Weinhaus, Judiciocracy, or Children of the Court had a protected interest in attending the football game. Judiciocracy and Children of the Court have no right to access school grounds beyond those of a member of the public attending a school-sponsored event.

Counts III and IV allege that the due process violation occurred when Defendants restricted Weinhaus's access to the high school football game, by asking him to watch part of the game from an alternative location after a verbal altercation with a student and then by asking him to leave after his children had left the game and a student continued to report that he made her feel uncomfortable. As stated, the Seventh Circuit has determined that "[m]embers of the public . . . have no constitutional right of access to public schools." *Hanneman*, 673 F.3d at 755. Dismissal is warranted when a plaintiff fails to plead a protected interest. *See J.S. v. Manchester Cmty. Schs. Corp.*, No. 3:19-CV-421, 2019 WL 7283285, at *3 (N.D. Ind. Dec. 23, 2019) (dismissing procedural and substantive due process claims against a school district because it was not enough to allege a right "to attend certain events that are open to all people of the community"); *Schuessler v. Fort Madison Comm. Sch. Dist.*, No. 317CV00039, 2018 WL 10345327 (S.D. Iowa Mar. 23, 2018) (analyzing case law from various circuits and concluding that a father who was banned from school events could not state a claim for the violation of due process). Plaintiffs also cannot demonstrate that Defendants' conduct was "utterly lacking in rational justification," as needed to assert a substantive due process claim. *See Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 733 (7th Cir. 2006). The Amended Complaint outlines the many reasons supporting Dean McCord's eventual decision to ask Weinhaus to leave the game. *See* Am. Compl. ¶¶ 110–11, 119, 146 (alleging that staff asked Weinhaus to leave the game after he engaged in a verbal altercation with a student, who then reported to staff that Weinhaus was following her, making her uncomfortable). Plaintiffs do not have a viable substantive due process claim.

Similarly, any procedural due process claim must establish a protected interest and identify what procedure was due, and in this context, courts have found that due to "the wide authority school districts possess to administer school property" districts are under no obligation to provide

a "pre-exclusion process." *Schuessler*, 2018 WL 10345327, at *9 (citing *Justice v. Farley*, No. 5:11–CV–99, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012), *Miller v. Montgomery Cty. R-II Sch. Dist.*, No. 2:10 CV 78, 2011 WL 1299536, at *3 (E.D. Mo. Apr. 1, 2011), *Cwik v. Dillon*, No. C–1–09–669, 2010 WL 5691404, at *6 (S.D. Ohio Sept. 20, 2010) and *Mejia*, 2002 WL 1492205, at *7). Here, if Plaintiffs are attempting to bring a procedural due process claim, case law has determined that no process is due when an individual is excluded from school property, and they do not allege how they were otherwise entitled to procedural protections. *See Hannemann*, 673 F.3d at 752–58 (concluding that banning an individual from school property is not a deprivation of a protected liberty); *see also Zeyen v. Pocatello/Chubbuck Sch. Dist. #25*, No. 4:16-CV-00458-DCN, 2018 WL 2224053, at *6 (D. Idaho May 15, 2018) (dismissing claim for failure to state a fundamental liberty interest in "attending school-related activities"). Likewise, the purchase of a six-dollar ticket did not create a right to due process. *See Sims v. Jones*, No. 84 C 4662, 1985 WL 1536, at *2 (N.D. Ill. Feb. 7, 1985) (holding that the purchase of a ticket from the state lottery system did not create a property right sufficient to bring a due process claim). Counts III and IV should be dismissed.

### F. Plaintiffs Fail to State a Claim for Violation of "Parental Rights"

In Count V, Weinhaus complains that Defendants interfered with his "parental rights." While the Due Process Clause protects "the fundamental right of parents to make decisions concerning the care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 66 (2000), the Seventh Circuit has held that "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court," *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005). Absent "action specifically aimed at interfering with that relationship," there is no violation of parental rights. *Russ*, 414 F.3d at 789.

Weinhaus complains that Defendants violated his parental rights by preventing him from saying "hello" to his children for less than half of one quarter and halftime of a single high school football game. The events leading up to the "restriction" started sometime "midway through the Second Quarter," and Weinhaus's children left after halftime. Am. Compl. ¶¶ 108, 137. The supposed limitation on Weinhaus's communication with his children therefore lasted, at most, less than an hour. There is no allegation of any other restriction on Weinhaus's communication with his children, much less that the Board somehow interfered with his right to make fundamental parenting decisions. Weinhaus attended prior school events without incident and was assured that he could also attend future events. Am. Compl. ¶¶ 35–39, 162. For good reason, courts have "always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Vesely v. Illinois Sch. Dist. 45*, 669 F. Supp. 3d 706, 710 (N.D. Ill. 2023). A claim for interference with parental rights cannot rely on allegations of interference that are merely "an incidental result of state action." *Russ*, 414 F.3d at 791. *Walgren v. Heun*, No. 17-CV-04036, 2019 WL 265094, at *9 (N.D. Ill. Jan. 17, 2019) (dismissing parental rights claim where the alleged interference was only related to uncovering criminal misconduct). The brief, incidental restriction preventing Weinhaus from saying "hello" to his children does not rise to the level of a constitutional violation.

### G. Plaintiffs Fail to State Claims Under the Illinois Constitution

To start, Plaintiffs' claims under the Illinois Constitution should be dismissed because there is no private right of action for damages under the Illinois Constitution. The text of the Illinois Constitution makes no mention of a private right of action. *See* Ill. Const. art I, § 4; § 2. Both state courts and federal district courts analyzing claims brought pursuant to these provisions of the state constitution have held that this language fails to explicitly authorize a private right to damages. *See, e.g., Travis v. Illinois Dep't of Corr.*, No. 18-CV-00282, 2024 WL 2052067, at *16 (N.D. Ill.

12

May 8, 2024) ("District judges in this Circuit . . . have held that there is no such right of action. . . . This Court agrees that no such right exists under Section 4."); *Teverbaugh ex rel. Duncan v. Moore*, 311 Ill. App. 3d 1, 5–6 (1st Dist. 2000). Because Illinois law does not provide for a private right of action for damages, Plaintiffs' state constitutional claims should be dismissed.

Further, "where adequate remedies exist under state common law or federal law for certain causes of action, a plaintiff may not maintain an independent cause of action under the Illinois Constitution." *S.J.,* 685 F.Supp.2d at 862; *see also White v. Madison Cnty. Ill.,* No. 07–CV–716–MJR, 2008 WL 539230, at *6 (S.D. Ill. Feb. 26, 2008). "A claim for damages under § 1983 for violations of the federal constitution is an adequate remedy." *Velazquez v. Williams*, No. 14 CV 9121, 2015 WL 4036157, at *3 (N.D. Ill. June 30, 2015) (citations omitted). Because Plaintiffs have an adequate remedy under § 1983, the claims under the Illinois Constitution should be dismissed. *See also Nicholas v. Melson*, No. 11 CV 4367, 2013 WL 12618360, at *3 (N.D. Ill. Jan. 31, 2013) (dismissing due process claim under the Illinois constitution); *Metro. All. of Police v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 18 C 2468, 2018 WL 4181490, at *8 (N.D. Ill. Aug. 31, 2018) (dismissing free speech-related claims under the Illinois constitution).

Finally, even if a cause of action was available under the Illinois Constitution, Plaintiffs' state constitutional claims would fail for the same reasons as their federal claims, as set forth above. *See Banske v. City of Calumet City*, No. 17 C 5263, 2018 WL 372145, at *3 (N.D. Ill. Jan. 11, 2018) (dismissing speech-related retaliation claim under the Illinois Constitution when the federal claim, based on the same theory, failed); *Rosario v. Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago*, No. 10 C 1512, 2013 WL 842651, at *7 (N.D. Ill. Mar. 6, 2013) ("[C]ourts examining potential violations of the Due Process Clause of the Illinois Constitution apply the same tests as applied to potential violations of the Due Process Clause of the federal Constitution.").

13

### H. Plaintiffs' State Constitutional Claims Are Barred by the Tort Immunity Act

Plaintiffs' claims under the Illinois Constitution are also barred by the Local Government and Governmental Employees Tort Immunity Act. 745 ILCS 10/1-101 *et seq*. A local public entity is not liable where the employee is not liable, 745 ILCS 10/2-109, and "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused," 745 ILCS 10/2-201. "Read together, these sections shield a municipality from liability for the discretionary acts or omissions of its employees." *Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 2019 IL 124283, at ¶ 23. There are two elements of this defense: (1) the employee held either a position involving the determination of policy or the exercise of discretion, and (2) the employee engaged in both the determination of policy and the exercise of discretion. *Id*. at ¶ 27. "Policy determinations" are "decisions requiring the public entity or employee to balance competing interests and make a judgment call as to what solutions will best serve each of those interests," and can include considerations of safety. *Id.*

Dean McCord and Linder exercised discretion in asking Weinhaus to first watch the game away from the stands and later to leave. These decisions balanced the interests of safety against any interest that Weinhaus had in watching the remainder of the football game and required judgment. *See Andrews*, 2019 IL 124283 (explaining how an employee's act is discretionary when it involves using personal judgment about whether and how to act). Discretionary immunity protects decisions of school personnel in response to disciplinary matters. *See Hascall v. Williams*, 2013 IL App (4th) 121131 (2013) (applying Section 2-201 to immunize the actions of school staff made in response to a bullied student). Dean McCord and Linder, both in charge of security concerns, engaged in determinations of how to respond to behavior from an attendee of a school-

14

sponsored event, including the appropriate consequences and remedial action. *See Hascall*, 2013 IL App (4th) 121131, ¶ 28. The allegations here establish that Section 2-201 of the Tort Immunity Act immunizes the actions of Dean McCord and Lane Linder.

## I. There Is No Basis for Injunctive Relief

To the extent Plaintiffs seek injunctive relief against the Board, they fail to assert standing for such relief, as a plaintiff must show that he "is under an actual or imminent threat of suffering a concrete and particularized injury-in-fact; that this injury is fairly traceable to the defendant's conduct; and that it is likely that a favorable judicial decision will prevent or redress the injury." *Cook County v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020). None of the allegations are sufficient to support an inference that there is any immediate or likely threat of future injury to Weinhaus, Judiciocracy, or Children of the Court to justify the broad injunctive relief they seek. The Amended Complaint alleges that Weinhaus has attended countless school-sponsored events without issue and was specifically told he is not restricted from attending future events. The pleading makes clear that the issues arising at the football game stemmed from unique circumstances including a female student who found him "creepy," complaining that he made her uncomfortable. The likelihood that this event would occur again is entirely speculative. One isolated event related to his own involvement in an altercation with a student cannot be sufficient to establish standing for injunctive relief. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("[A] past injury alone is insufficient to establish standing for purposes of prospective injunctive relief" unless accompanied by "continuing, present adverse effects").

## III. Conclusion

Based on the foregoing, Defendants the Board of Education of Township High School District 113, Dr. Chala Holland, Don McCord, and Lane Linder respectfully request that this Court dismiss Plaintiffs' Amended Complaint in its entirety for failure to state a claim upon which relief

can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: March 16, 2026

Respectfully submitted,

**BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DR. CHALA HOLLAND**, **DON MCCORD, and LANE LINDER**, Defendants.

By: */s/ William R. Pokorny*
    One of their attorneys

William R. Pokorny
wrp@franczek.com
Lindsay A. Hill
lah@franczek.com
Franczek P.C.
300 S. Wacker Dr.
Suite 3400
Chicago, IL 60606
(312) 986-0300

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 16, 2026, he caused a copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** to be e-filed using the CM/ECF e-filing system and served via electronic mail on all parties of record, namely:

> Adam Florek
> Florek Law, LLC
> 11 Knollwood Dr.
> North Caldwell, New Jersey 07006
> aflorek@florekllc.com
>
> Ryan M. Cleys #6326726
> 115 East Irving Park Rd. #936
> Streamwood, IL 60107
> Rmcleys@gmail.com
>
> Edward "Coach" Weinhaus, Esq.
> Only as to the Entity Plaintiffs
> LegalSolved, LLC, FOIASolved division
> 11500 Olive Blvd., Suite 133
> Saint Louis, Missouri 63141-7126
> eaweinhaus@gmail.com

*/s/ William R. Pokorny*

17