**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDWARD "COACH" WEINHAUS, CHILDREN OF THE COURT, AND JUDICIOCRACY, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, CITY OF HIGHLAND PARK, DR. CHALA HOLLAND, in her official capacity; LANE LINDER, individually and in his official capacity; DON MCCORD, individually and in his official capacity; CHIEF LOUIS JOGMEN, in his official capacity, and Officer Doe 1, Officer Doe 2, and Officer Doe 3, individually and in their official capacities.<br><br>        Defendants. | Case No. 2025-cv-14662<br><br>The Honorable Judge Jorge Alonzo |

**DEFENDANT CITY OF HIGHLAND PARK AND CHIEF LOUIS JOGMEN'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

### I.    Relevant Facts Pled.

Edward "Coach" Weinhaus (hereinafter "Weinhaus") filed a separate lawsuit on behalf of Judiciocracy LLC against the Highland Park Police Department alleging violations of the Illinois Freedom of Information Act. [Doc. 029 ¶¶ 84, 91]. That matter is currently pending in Lake County Circuit Court under case 2025CH0070. [Id. ¶ 84]. The Highland Park Police Department produced highly redacted records in the FOIA lawsuit on October 1, 2025. [Id. ¶ 87].

Plaintiffs jointly purchased a ticket to attend the Highland Park High School homecoming football game ("Homecoming"). [Id. ¶¶ 25-26]. Weinhaus is the custodial parent of two Highland Park High School ("HPHS") students. [Id. ¶ 33]. Defendant Don McCord ("Dean McCord") is the

1

Dean of Students at Highland Park High School and acted as a school administrator and agent of the Board of Education. [Id. ¶¶ 15, 117]. Defendant Lane Linder is the Head of Security for Highland Park High School and District 113 and acted as a security administrator and agent of the Board of Education. [Id. ¶ 16].

Weinhaus attended Homecoming on October 10, 2025. [Id. ¶ 101]. A female high school student accosted Weinhaus then demanded that Dean McCord remove Weinhaus from the game. [Id. ¶¶ 108; 114-115]. Dean McCord asked Weinhaus to leave the game and Weinhaus refused. [Id. ¶¶ 119-122]. Dean McCord threatened to have Weinhaus arrested for trespass and demanded Weinhaus not sit in the stands. [Id. ¶¶ 121-122; 124].

Later, after the halftime show, Dean McCord waived over three Highland Park Police Officers and head of security Linder and demanded Weinhaus leave the game or be arrested for trespassing. [Id. ¶¶ 137, 140, 142]. Dean McCord advised Weinhaus that his children had left and a high school student was uncomfortable with Weinhaus' presence and felt he was following her. [Id. ¶ 146]. Dean McCord and Linder advised Weinhaus that the school was private property and they could remove anyone if it made a student uncomfortable. [Id. ¶ 150]. A Highland Park Police Officer stated he would remove Weinhaus by putting him in handcuffs for trespassing if he did not leave. [Id. ¶ 152]. Weinhaus eventually agreed to walk to a designated location and finish watching the third quarter alone. [Id. ¶ 160] Weinhaus told the Highland Park Police Officers to "beat it and walk away" and they did. [Id. ¶ 165]. Two of the Officers stood within 20 feet of Weinhaus to ensure he did not return. [Id. ¶ 178].

Plaintiffs allege Highland Park Police Department's "participation in removing Weinhaus from the football game" was motivated by retaliation for Plaintiff Judiciocracy's FOIA lawsuit. [Id. ¶ 100]. Plaintiffs allege these actions violated their first amendment right to free speech and

2

fourteenth amendment right to due process under the United States Constitution and corresponding Illinois Constitutional provisions as well as "§ 1983 parental rights" (constitutional or federal statutory provision unidentified).

### II.     Legal Standard

A Rule 12(b)(6) motion to dismiss challenges a pleading for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must take all factual allegations as true, but need not accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do. *Bell Atl. Corp.*, 550 U.S. at 555.

### III.     Argument.

#### (1) Plaintiffs fail to state a claim for municipal liability and the City of Highland Park should be dismissed with prejudice.

A municipality cannot be held liable under §1983 on a *respondeat superior* theory, but only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury. *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 691 (1978). To successfully plead municipal responsibility, a plaintiff must allege "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the "moving force" behind the constitutional injury" *Ruiz-Cortez v. City of Chi.,* 931 F.3d 592, 598 (7th Cir. 2019). The City previously raised Plaintiffs' failure to properly plead *Monell* liability in its motion to

dismiss Plaintiffs' original Complaint. [Doc. 021-022]. Plaintiffs' First Amended Complaint does not cure this deficiency and the City should be dismissed with prejudice.

To survive a motion to dismiss, Plaintiffs must plead factual content that allows the court to plausibly infer that *the City* violated their constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Municipal action can be plead as: "(1) an express policy that causes a constitutional deprivation when enforced (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). Boilerplate statements that repeat the elements of a *Monell* claim without any further factual content are subject to dismissal for failing to state a claim. *Peterson v. City of Chicago*, No. 14-cv-9881, 2015 WL 13882814, at *3 (N.D. Ill. June 23, 2015).

Plaintiffs' attempts at pleading *Monell* liability are mere boilerplate recitations of the *Monell* standards. [See: Doc. 029 ¶¶ 14, 95, 97-99]. Plaintiffs allege Chief Jogmen serves as the final policymaker regarding police operations, training, and policies governing police presence at school events, and he "established, maintained, or ratified the policy of retaliation which caused the constitutional violated alleged herein." [Id. ¶ 14]. The First Amended Complaint does not contain any facts to suggest Chief Jogmen or his "policy of retaliation" caused Plaintiffs' alleged constitutional injuries. As the "final policymaker" theory is a threadbare recitation of the *Monell* requirement without any factual support, Plaintiffs fail to state a claim against the City.

Plaintiffs' attempt at pleading a "widespread practice" fares no better. To succeed on this theory, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). To survive a motion to dismiss, a complaint must "allege facts that permit the

4

reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id*. Plaintiffs identify one incident in their First Amended Complaint, their own. Plaintiffs then conclude the City "maintains a policy, custom or practice of deferring to school officials' requests to remove individuals from school events without conducting any independent assessment of whether probable cause exists for arrest or whether the removal violates individuals' constitutional rights." [Doc. 029 ¶ 95]. There are no allegations to suggest such a policy exists, as the First Amended Complaint does not contain any well pled facts as to other instances of this purported policy to raise the claim from an isolated incident to a widespread practice of the City. As such, Plaintiffs fail to state a claim against the City of Highland Park.

Finally, Plaintiffs' failure to train theory lacks merit. A failure to train claim requires a showing that inadequate training amounts to deliberate indifference to the public. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiffs' claim the City fails to train its officers on the requirement of probable cause, first amendment rights at public school events, constitutional limitations on trespass enforcement at ticketed public events, the prohibition on effectuating retaliatory exclusions at the behest of government officials. [Doc. 029 ¶ 98]. Again, there are no facts pled to suggest a known risk to the public due to the failure of training in these specific areas. As there are no other instances of a "failure to train" or other indicia that the City was on notice that such a failure to train caused a known risk to the public that thereafter caused Plaintiffs' purported injuries, this theory also fails. Plaintiffs' second attempt at pleading municipal liability is unsuccessful and the City should be dismissed from this case with prejudice.

### (2) Plaintiffs fail to state a claim against Chief Louis Jogmen and he should be dismissed with prejudice.

The only allegations pertaining to Defendant Louis Jogmen in Plaintiffs' First Amended Complaint are that he is the Highland Park Police Chief and "serves as the final policymaker for

5

the City regarding police operations, and training and policies governing police presence at school events" [Doc. 029 ¶ 14]. Plaintiffs do not allege that Defendant Jogmen was involved, or even present, for the incident at the High School. To recover damages under 42 USC § 1983, a plaintiff must establish that a defendant was personally responsible for any alleged deprivations of his constitutional rights. *Conner v. Vacek*, 806 F. App'x 485, 488 (7th Cir. 2020); *Kelly v. Mun. Cts. Of Marion Cnty., Ind.*, 97 F.3d 902, 909 (7th Cir. 1996). Personal involvement requires at least "some casual connection or affirmative link between the action complained about and the official sued." *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025) quoting *Gentry v. Duckworth*, 65 F. 3d 555, 561 (7th Cir. 1995).

Furthermore, Chief Jogmen is sued only in his official capacity. Official capacity suits generally represent only another way of pleading an action against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Where the governmental entity has also been named as a defendant, a suit against an individual in their official capacity is duplicative and properly dismissed. See: *Selmani v. Vill. of Bartlett*, 515 F.Supp.3d 882, 889 (N.D. Ill. 2021). The claim against Chief Jogmen is really one against the City and he should also be dismissed for failing to state a claim for municipal liability.

### (3) *Counts I, III and V do not contain allegations pertaining to the City or Chief Jogmen and they should be dismissed with prejudice from these claims.*

Counts I, III and V are brought by all Plaintiffs against all Defendants, but fail to delineate the supposed unlawful actions of each named Defendant. Counts I and III are, by label and pleading, based solely upon the "First Limitation of Rights." The "First Limitation of Rights" is defined in the First Amended Complaint as Dean McCord's threat to remove Weinhaus by force for trespassing if he sat in the stands. [Doc. 029 ¶ 124]. Similarly, Count V refers to the actions of the School District Defendants in threatening to have Weinhaus removed if he went to say hello

to his children in the stands. [Id. ¶ 249]. There are no facts pled to suggest the individual officers, or anyone associated with the City of Highland Park, participated in this conduct. Rather, the allegations of officer conduct did not occur until after halftime, when Weinhaus' children had already left the game. [Id. ¶¶ 137, 140, 142, 146]. Weinhaus cannot state a cause of action for interference with his parental rights if his children were no longer present at the time the Highland Park Police Officers became involved. Counts I, III and V do not contain conduct by the City, unnamed police officers or Chief Jogmen and they should be dismissed with prejudice from these claims.

### (4) Probable Cause bars Plaintiffs' First Amendment Retaliation Claim and Count II should be dismissed with prejudice.

Count II is again brought by all Plaintiffs against all Defendants, but for restricting "where Plaintiff could be at Homecoming without any objective reason allowable by law in the Second Limitation of Rights." [Doc. 029 ¶ 220]. The "Second Limitation of Rights" is defined in the First Amended Complaint as the requirement that Weinhaus leave the game under threat of arrest without any objective reason to limit access to a public form. [Id. ¶ 174]. Plaintiffs' theory is that three unknown Highland Park Police Officers threatened to arrest him for trespassing in retaliation for his filing a FOIA lawsuit on behalf of Judiciocracy against the City. The well-pled allegations of the First Amended Complaint foreclose this claim.

"The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019); *Kitterman v. City of Belleville*, 66 F.4th 1084, 1091 (7th Cir. 2023). While Weinhaus was not arrested, his claims of 'threat of arrest' are barred if the police officers had probable cause to threaten him with arrest."Probable cause to justify an arrest exists if the totality of facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that

the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Probable cause is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances. *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). The existence of probable cause depends upon the elements of the predicate criminal offense as defined by state law. *Doe v. Gray*, 75 F.4th 710, 719 (7th Cir. 2023). Once a police officer has sufficient facts to establish probable cause, "he has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence or possible defenses." *Schimandle v. Dekalb Cnty Sheriff's Off.*, 114 F.4th 648, 659 (7th Cir. 2024).

Weinhaus alleges he was under threat of arrest for trespassing. [Id. ¶ 152]. A person commits the offense of criminal trespass to real property when he knowingly remains upon the land of another after receiving notice from the owner or occupant to depart. 720 ILCS 5/21-3(a)(3); Illinois Pattern Jury Instructions, Criminal, No. 16.11. The First Amended Complaint establishes probable cause to believe that Weinhaus had committed, was committing or was about to commit the crime of trespass. Dean McCord was the Dean of Students at Highland Park High School and acted as a school administrator and agent of the Board. [Doc. 029 ¶15]. He asked Weinhaus to leave the game and Weinhaus refused. [Id. ¶¶ 119-122]. He threatened to have Weinhaus arrested for trespass. [Id. ¶ 121]. Later, in the presence of three Highland Park Police Officers, Dean McCord demanded Weinhaus leave the game or be arrested for trespassing. [Id. ¶¶ 140-141]. Dean McCord told Weinhaus in the presence of the police officers that the reason for his removal included complaints by a girl that she was uncomfortable with Weinhaus' presence and he was following her. [Id. ¶ 146]. Weinhaus protested, and the head of security advised him he would be placed under arrest if he did not leave. [Id. ¶ 159.].

These facts establish that Dean McCord, as an agent of the Board- the owner or occupant of the High School Football Field- told Weinhaus to leave in the presence of the police officers and he refused. Statements alone that identified individuals were told to leave by the owner or occupant and refused are enough to establish probable cause for the offense of trespass. See: *Lyberger v. Snider*, 42 F.4th 807, 813 (7th Cir. 2022). Highland Park Police Officers were in the presence of the Dean of Students and Head of Security and observed them order Weinhaus to leave the school property. They were present as he protested and refused to leave. They therefore had probable cause to threaten to arrest him. Probable cause accordingly bars Plaintiff's First Amendment retaliation claim.

### (5) *Plaintiffs fail to invoke a constitutionally protected property right sufficient to state a claim for a due process violation and Count IV should be dismissed.*

Plaintiffs fail to state a claim for any violation of due process. To state a claim for violation of substantive due process where a fundamental right or liberty interest is not involved, a Plaintiff "must allege that the defendants deprived him of a state-created property interest by arbitrary and irrational conduct and that the defendants either committed a separate constitutional violation or state law remedies are inadequate." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). Similarly, a deprivation of procedural due process requires the threshold showing of a constitutionally protected property interest. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 768 (7th Cir. 2021). As Plaintiffs fail to plead a recognized property interest, their due process claim fails.

Constitutionally protected property interests are not created by the Constitution, but by independent sources such as state law or contract. *Bd.of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[F]ederal property interests under the 14th Amendment usually arise from rights created by statutes, state or municipal regulations or ordinances, and contracts with public employees." *O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015). To prevail on a due

9

process claim, the Plaintiff must "identify a source, independent of the Due Process Clause, for the protectable property interest she claims to have." *Price v. Bd. of Educ. of City of Chicago*, 775 F.3d 605, 608 (7th Cir. 2014). "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. "A protected property interest exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Bell v. City of Country Club Hills*, 841 F.3d 713, 719 (7th Cir. 2016).

Plaintiffs plead only the conclusory allegation that the purchase of a ticket to a high school homecoming game created a property interest in attending the game. [Doc. 029 ¶ 30]. Plaintiffs recognize that school officials have discretion to remove disruptive attendees, but conclude they are entitled to "procedural protections". [Id.]. Plaintiffs do not cite any language from the ticket or any other facts to elevate the purchase of a ticket from a unilateral expectation to a legitimate claim of entitlement. They therefore fail to make the threshold showing of a protected property interest and their due process claim fails.

## IV. Conclusion

Plaintiffs' bootstrapped allegations against the City, its Police Chief and unnamed police officers cannot withstand Rule 12(b)(6) scrutiny. All claims stemming from the "First Limitation of Rights" do not implicate the City or its employees. The claims stemming from the "Second Limitation of Rights" establish the unnamed officers had probable cause to arrest Weinhaus for trespass, foreclosing Plaintiffs' claims of a retaliatory motive for threatening his arrest. Plaintiffs' fail to plead factual content that plausibly suggests a final policymaker or a widespread practice was responsible for their purported injuries, and they therefore fail to state a claim against the City

or Chief Jogmen in his official capacity. Accordingly, Plaintiffs' First Amended Complaint, the City and Chief Jogmen should all be dismissed with prejudice.

Respectfully Submitted,

**THE CITY OF HIGHLAND PARK**
**CHIEF LOUIS JOGMEN**

By:    */s/ Lauren M. DaValle*
       One of their attorneys

Lauren M. DaValle
Odelson, Murphey, Frazier & McGrath, LTD.
3318 W. 95th St.
Evergreen Park, IL 60805
(708) 424-5678