## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Edward "Coach" Weinhaus**, **Children of the Court**, and **Judiciocracy LLC** *Plaintiffs*, v. **Board of Education of Township High School District 113**, **City of Highland Park**, **Dr. Chala Holland**, *in her official capacity*, **Lane Linder**, *individually and in his official capacity*, **Don McCord**, *individually and in his official capacity*, **Chief Louis Jogmen** *in his official capacity*, and **Officer Doe 1**, **Officer Doe 2**, and **Officer Doe 3** *individually and in their official capacities*, *Defendants*. | Case No.: 1:25-cv-14662 Hon.: Jorge L. Alonso |

### Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss

Plaintiffs' Edward "Coach" Weinhaus, Children of the Court, and Judiciocracy LLC (together, "Plaintiffs") brought this lawsuit against Defendants to vindicate the abrogation of their First Amendment rights. Following the filing of their First Amended Complaint, Defendants filed blunderbuss motions to dismiss Plaintiffs' claims. In opposition to those Motions, Plaintiffs state as follows:

1

CONTENTS

Contents ........................................................................................................................2

Table of Authorities .....................................................................................................3

Introduction ...............................................................................................................1

Factual Background .....................................................................................................2

Argument ....................................................................................................................5

   a)   Standard of Decision.................................................................................5

      1)   Federal Rule of Civil Procedure 12(b)(6) ........................................5

      2)   Section 1983 Liability.......................................................................5

   b)   Plaintiffs Have Stated Claims for Violations of Their First Amendment Rights.........................................................................................................................6

      1)   Plaintiffs Have Alleged Violations of Their First Amendment Rights Against Dr. Chala Holland, Lane Linder, and Don McCord ...............................7

      2)   Plaintiffs Have Alleged Municipal Liability Against Board of Education of Township High School District 113  and Dr. Chala Holland, Lane Linder, and Don McCord in Their Official Capacities...........................................................10

   c)   Plaintiffs Have Alleged that The City of Highland Park and its Police Department are Liable Under § 1983 ....................................................................13

   d)   Plaintiffs Have an Established Right to Due Process Which was Violated by *All* Defendants..........................................................................................................14

      1)   Defendants Board of Education of Township High School District 113, Dr. Chala Holland, Lane Linder, and Don McCord violated Plaintiffs' Due Process Rights ...........................................................................................................15

      2)   The City of Highland Park, its Police Department, and its Officers violated Plaintiffs' Due Process Rights.......................................................................17

   e)   Injunctive Relief Is Appropriate Because the Threat of Future Retaliation Looms.........................................................................................................................19

   f)   Plaintiffs' Claims for Violation of Illinois Constitutional Protections............20

Conclusion....................................................................................................................21

<u>T</u>ABLE OF <u>A</u>UTHORITIES

**Cases**

<u>Adams v. Bd. of Educ. of Harvey Sch. Dist. 152</u>, 968 F.3d 713 (7th Cir. 2020) .......... 8

<u>Bd. of the Cty. Comm'rs v. Brown</u>, 520 U.S. 397 (1997) ............................................ 11

<u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544 (2007) ....................................... 5

<u>Brown v. Kemp</u>, 86 F.4th 745 (7th Cir. 2023)............................................................ 8

<u>Burke v. 401 N. Wabash Venture, LLC</u>, 714 F.3d 501 (7th Cir. 2013)........................ 5

<u>Cassell v. Snyders</u>, 990 F.3d 539 (7th Cir. 2021) ...................................................... 9

<u>City of Canton v. Harris</u>, 489 U.S. 378 (1989)......................................................... 11

<u>Connick v. Thompson</u>, 563 U.S. 51 (2011) ......................................................... 11, 14

<u>Cruz v. Guevara</u>, 801 F. Supp. 3d 767 (N.D. Ill. 2024) ............................................ 8

<u>Germano v. Winnebago County</u>, 403 F.3d 926 (7th Cir. 2005) ................................. 15

<u>Gibson v. City of Chicago</u>, 910 F.2d 1510 (7th Cir. 1990) .......................................... 5

<u>Hawkins v. Mitchell</u>, 756 F.3d 983 (7th Cir. 2014) .................................................. 7

<u>Holleman v. Zatecky</u>, 951 F.3d 873 (7th Cir. 2020)............................................. 6, 20

<u>Landmark Commc'ns v. Virginia</u>, 435 U.S. 829 (1978)............................................ 8

<u>Lawrence v. Kenosha County</u>, 391 F.3d 837 (7th Cir. 2004) ..................................... 6

<u>McCauley v. City of Chi.</u>, 671 F.3d 611 (7th Cir. 2011) ........................................... 6

<u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978) ............. 6, 10, 13

<u>Murphy v. Rychlowski</u>, 868 F.3d 561 (7th Cir. 2017).......................................... 15, 16

<u>Redd v. Nolan</u>, 663 F.3d 287 (7th Cir. 2011) .......................................................... 15

<u>Rossi v. City of Chi.</u>, 737 F.3d 729 (7th Cir. 2015) .................................................. 6

<u>Russ v. Watts</u>, 414 F.3d 783 (7th Cir. 2005).......................................................... 17

<u>Spalding v. City of Chi.</u>, 186 F. Supp. 3d 884 (N.D. Ill. 2016) .................................. 8

<u>The Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564 (1972) .......................... 16

**Statutes**

42 U.S.C. § 1983.................................................................................................. 1, 5

**Rules**

Federal Rule of Civil Procedure 12 ......................................................................... 5

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1................................................................................... 15

## INTRODUCTION

Plaintiff Edward "Coach" Weinhaus ("Coach") individually and in his role acting on behalf of Plaintiffs Judiciocracy and Children of the Court attended the HPHS Homecoming Football Game as ticketed members of the public. It is undisputed that Coach conducted himself without incident, standing near the south end of the bleachers, cheering, and speaking to no one. Midway through the second quarter, a female student (identified as MFG) approached and accosted Coach without provocation, made obscene gestures toward him, and declared she would have him removed. Within seconds, Dean McCord approached Coach and began to interfere with Plaintiffs' and their attendance at Homecoming. Eventually, McCord and Lane Linder, along with three HPPD officers would demand Coach leave the game entirely or face arrest for trespassing all while knowing the stated reasons for his removal were false, that Coach had not engaged in any misconduct, and that McCord's own earlier restriction had created the very situation he was using to justify removal by preventing him from saying "hello" to his custodial children.

Coach left under duress after negotiating a limited agreement preserving what remained of his rights and dignity, but McCord breached that agreement by personally escorting Coach out under ongoing threat of arrest rather than permitting him to leave of his own accord. After Coach left school property, two HPPD officers stationed themselves within twenty feet of him on the public sidewalk to prevent his return. As a result, this litigation followed alleging Constitutional violations, pursuant to 42 U.S.C. § 1983 and parallel provisions of the Illinois Constitution.

1

Now, Defendants have filed their Motions to Dismiss: <u>Defendants Board of Education of Township High School District 113, Dr. Chala Holland, Don McCord and Lane Linder's Motion to Dismiss Plaintiff's Amended Complaint</u>; and <u>Defendant City of Highland Park and Chief Louis Jogmen's Motion to Dismiss Plaintiffs' First Amended Complaint</u> attempting to excuse their repeated and ongoing interference with one of their most vocal critic's First Amendment Rights.

### FACTUAL BACKGROUND

Coach has been called the "nation's most aggressive judicial reformer;" he is the CEO of Judiciocracy LLC; he is the founder of Children Of The Court and volunteers as its Executive Director; and he is engaged in numerous other ventures where he leverages his experience as a reporter to advocate and investigate on behalf of various groups. <u>Am. Compl.</u>, ¶¶ 5-9. Since 2017 he has been a committed parent to students of District 113 ("HPHS"), booster, and volunteer. Over nearly a decade, he attended home and away games as the team's most traveled fan, volunteered to teach entrepreneurship courses, chaperoned school events, and participated in school celebrations even when his own children were not present. He is every school's ideally engaged parent. He has never been involved in a physical altercation at any school event, has never been asked to leave for misconduct, and consistently conducted himself with the decorum expected of a children's advocate and licensed guardian *ad litem*.

In October 2018, after Coach spent a fully supervised day teaching at HPHS, the school filed a false report with DCFS—a report later deemed "Unfounded" and

placed in the Illinois False Claims Database. Id., at 46-48. Rather than treating the matter as closed, HPHS Security acted as though Coach had been found culpable. Id., at ¶¶ 48-49. In the winter of 2019, the then-Head of Security accosted Coach in front of his children at a basketball game, pressured him to stop attending school events in direct violation of his custody orders, and placed him on a school watch list requiring a security escort at all times on school grounds—all without any observation of misconduct. Id., ¶¶ 49-52. Coach was eventually removed from the watch list only after he obtained sole primary residential custody of the two children involved and de-registered them from HPHS. Id., ¶ 57.

In 2023, Coach visited HPHS by invitation and, after the event ended, stood alongside a security guard to observe students during lunch—conduct he had seen other parents engage in. He used the opportunity to assess what he believed were serious security vulnerabilities. Id., ¶ 59. He left without incident. HPHS responded by immediately re-adding Coach to the watch list in retaliation for his observation of school security. Id., ¶ 60. The watch list policy—maintained by the Superintendent, Dean McCord, and Linder—has no objective standards, requires no actual misconduct, and has been applied repeatedly to individuals who criticize school administration. Id., at ¶¶ 61-64.

In the spring of 2023, Coach met with the then-Superintendent to share his concerns about HPHS security personnel, including his observations that security staff were focused on minor issues while neglecting serious responsibilities. Id., ¶ 74. His recommendations led to the departure of specific staff he had flagged. His

warnings proved prescient: in 2025, HPHS publicly admitted serious security incidents involving images of students taken in bathrooms. Id., ¶ 76.

Coach, because of his prior advocacy, was sought out by the *Lake County Gazette* for comment and was quoted prominently in multiple articles, calling out the administration for a "lack of transparency" and declaring that "accountability at schools is something for parents to take into their own hands." Id., ¶¶ 79-81. HPHS is well aware of these articles and sought to retaliate against him for speaking publicly about the issue. Id., at ¶ 82.

Beginning in March 2025, Judiciocracy LLC began an investigation and submitted FOIA requests to the Highland Park Police Department for public records related to incidents at Coach's children's residence. Am. Compl., ¶ 84. HPPD refused to produce the records, initially denying they existed and then claiming Coach's role as the requesting attorney was a basis for withholding them; when that position was rejected by the court in pending litigation, HPPD admitted the records existed but produced only a heavily redacted response. The HPPD's conduct is well documented in Case #2025CH00000070, filed in the Circuit Court of Lake County, Illinois and Coach and Judiciocracy's involvement has served as a basis for HPPD's retaliatory conduct. Id., at ¶¶ 85-93, 96, 98.

On October 10, 2025, Coach attended the HPHS Homecoming Football Game as a ticketed member of the public, acting also in his capacity as a representative of Judiciocracy and Children of the Court. Id., at ¶¶ 101-103. Midway through the second quarter, a female student (identified as MFG) approached and accosted Coach

4

without provocation, made obscene gestures toward him, and declared she would have him removed. Id., at ¶¶ 107-111. Within seconds, Dean McCord approached Coach and began to interfere with Plaintiffs' and their attendance at Homecoming particularly disallowing him to address his custodial children. Id., at 114-116.

For the balance of Homecoming McCord, Linder, and various other individuals continually interfered with Coach and Plaintiffs' presence and activities. Coach was not allowed to roam the event freely, communicate with his children, or generally *enjoy* the event or observe the activities as any other parent. Am. Compl., *passim*. Eventually, McCord and unidentified members of the HPPD would remove Coach under threat of force and arrest; these threats were made under pretext, pretext that McCord would admit was baseless and unfounded in either the events of the day or Coach's well-established history at the school. Am. Compl., ¶ 175.

**ARGUMENT**

**a) Standard of Decision**

    **1) Federal Rule of Civil Procedure 12(b)(6)**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007), not the merits of the suit. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint and draws all reasonable inferences in his favor. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013) (citations omitted).

    **2) Section 1983 Liability**

5

Under 42 U.S.C. § 1983, "every person" who acts under color of law and deprives a person of their constitutionally protected rights is liable for the injury endured. Similarly, a municipal entity, such as the City of Highland Park, its Police Department, or the Board of Education of Township High School District 113, faces liability if it has "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final-policy making authority caused a constitutional injury." Rossi v. City of Chi., 737 F.3d 729, 737 (7th Cir. 2015) (citing Lawrence v. Kenosha County, 391 F.3d 837, 844 (7th Cir. 2004)); see also Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 688 (1978). However, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Plaintiff must plead "some specific facts," such as who did what and when, to support his legal claim against the municipality. McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011).

### b) **Plaintiffs Have Stated Claims for Violations of Their First Amendment Rights**

"[T]he First Amendment protects against retaliation even if the retaliatory action itself does not amount to an independent constitutional violation. Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020). To make a "*prima facie* case, the plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First

Amendment activity was at least a motivating factor in the decision to impose the deprivation." Hawkins v. Mitchell, 756 F.3d 983, 996 (7th Cir. 2014) (collecting cases).

**1) Plaintiffs Have Alleged Violations of Their First Amendment Rights Against Dr. Chala Holland, Lane Linder, and Don McCord**

Coach engaged in sustained, constitutionally protected advocacy and newsgathering long before attending Homecoming on October 10, 2025. After years of activism regarding HPHS's security failures, Coach publicly criticized the school's leadership in prominent *Lake County Gazette* articles—including a February 2025 piece calling out HPHS administration "for lack of transparency in staffing changes amid bathroom camera scandal," and a March 2025 piece in which he declared that "accountability at schools is something for parents to take into their own hands." Am. Compl., ¶¶ 81. These statements directly implicated Linder in his role as Head of Security—the very official who would later confront Coach at Homecoming. Concurrently, Judiciocracy LLC was engaged in active FOIA litigation against the Highland Park Police Department, having exposed the "FOIA Stonewall." Id., at ¶¶ 84-86.

Coach's, Judiciocracy's, and Children of the Court's attendance at the Homecoming game was squarely in furtherance of these protected activities. Judiciocracy attended "in pursuit of its investigation of the Highland Park Police Department," and Children of the Court was present to advance "its mission" on behalf of beneficiary pledgees attending that evening. Id., ¶¶ 102-104.

7

These activities—public commentary on government misconduct, newsgathering at a public event, and advocacy for reform—fall within the core of First Amendment protection. The investigation into and reporting on public misconduct is a core First Amendment activity. Landmark Commc'ns v. Virginia, 435 U.S. 829, 830 (1978); Cruz v. Guevara, 801 F. Supp. 3d 767, 776-77 (N.D. Ill. 2024) (citing Brown v. Kemp, 86 F.4th 745, 763-64 (7th Cir. 2023)); see also Adams v. Bd. of Educ. of Harvey Sch. Dist. 152, 968 F.3d 713, 715 (7th Cir. 2020)(supporting the proposition that the proper workings of important public institutions, *like a school and school district*, is "a legitimate subject of public concern."); Spalding v. City of Chi., 186 F. Supp. 3d 884, 903-907 (N.D. Ill. 2016) (Supporting the proposition that the first amendment protects public employees from retaliatory acts when, as private citizens, they speak out about corruption – a matter of public concern).

Homecoming was "a ticketed event open to the general public," constituting *at minimum* a designated public forum. Yet despite purchasing a ticket, engaging in no misconduct, and complying with every directive, Plaintiffs were subjected to two distinct deprivations. The First Limitation of Rights barred Coach from full access to the stands without legal basis, intentionally severing his access to his custodial children and restricting his freedom of movement. Am. Compl., ¶¶ 117-136. The Second Limitation escalated further: Dean McCord and Linder summoned three HPPD officers to demand Coach's removal under threat of arrest for trespassing—a legally baseless charge, as "Coach had purchased a ticket and engaged in no conduct

8

constituting trespass under Illinois law." Id., ¶¶ 137-176. HPPD officers then monitored Coach even after he left school property. Id., ¶¶ 175, 185.

Removal from a public forum under threat of handcuffing, combined with sustained post-departure surveillance, represents precisely the category of government action that would deter a reasonable journalist, advocate, or parent from engaging in similar conduct. See Cassell v. Snyders, 990 F.3d 539, 545-46 (7th Cir. 2021) (finding the credible threat of an adverse action, *like an arrest*, can chill First Amendment activities).

The retaliatory motive is not merely inferred—it is admitted. Linder, who was personally named in the *Lake County Gazette* articles criticizing HPHS security, declared "We know who you are"—a statement made, as the complaint explains, in the context of discussing Coach's activism and media criticism, not in the context of a secret identity. Am. Compl., ¶¶ 175, 186, 204. The temporal proximity is stark: Dean McCord himself acknowledged that the stated justifications were pretextual, admitting that "one allegation against Weinhaus . . . was baseless[,]" Id., ¶ 175(a); and that "his personal experience with Coach would suggest that he knew the claim was made falsely." Am. Compl., ¶ 154. Dr. Holland, who "monitored McCord and Linder throughout the evening" and was updated by McCord when Coach left, directed and ratified the entire sequence of events. Id., at 176. That Dr. Chala Holland, Lane Linder, and Don McCord coordinated the removal of a ticketed and compliant attendee, under justifications they simultaneously acknowledged to be false, and in the immediate aftermath of embarrassing public criticism, compels one

9

conclusion: Coach's First Amendment activity was not merely a motivating factor in the decision to impose the deprivation—it was the reason for it.

### 2) Plaintiffs Have Alleged Municipal Liability Against Board of Education of Township High School District 113 and Dr. Chala Holland, Lane Linder, and Don McCord in Their Official Capacities

The First Amended Complaint establishes municipal liability on two independent grounds. First, Plaintiffs allege a widespread and well-settled custom of restricting access to school events based on criticism of school officials rather than objective misconduct or genuine safety concerns. The Amended Complaint shows that the *custom* was applied against Coach on multiple occasions demonstrating that it is not the result of individual employee misconduct but rather reflects the District's established practice. The complaint further alleges that the Defendants have leveraged the watch list to restrict access to school events for other parents and community members who criticized school policies or administrators. Am. Compl., ¶¶64-66. This pattern, spanning seven years and multiple incidents, constitutes precisely the widespread custom that carries the force of law under Monell. Second, Dr. Holland is expressly identified as "the final policymaker for the Board with authority to establish policies and customs regarding access to school events and management of security personnel." Id., ¶ 12. She monitored the events of October 10, 2025, received real-time updates from McCord, and ratified Coach's removal.

### A) Plaintiffs Have Alleged Defendants Board of Education of Township High School District 113, Dr. Chala Holland, Lane Linder, and Don McCord are Deliberately Indifferent Because of Their Pattern of Misconduct

"[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained

10

employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61-62 (2011) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id., (cleaned up, quoting Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)). To show deliberate indifference in the context of "a failure to train" case, a plaintiff must show a "pattern of similar constitutional violations by untrained employees" Id. at 62.

Coach, and by extension the entities he helms, has been the subject of repeated and ongoing harassment from Board of Education of Township High School District 113 and its administrators since his advocacy work began.

- Following a full-day teaching session at HPHS during which Coach's conduct was fully observed and commended by faculty, HPHS filed a false report with DCFS—a report that was later "deemed Unfounded by DCFS and added to the False Claims Database[,]" Am. Compl., ¶¶ 45–47;

- In the winter of 2019, the then-Head of Security "accosted Coach at a game, in front of his custodial children, to retaliate against Coach for having the False Claim added to the False Claims Database," notwithstanding that the matter had been "fully adjudicated in Coach's favor in both a court of law and via DCFS's review process." Security "pressed him not to attend games with no right to do so under the law and in direct contravention of custodial orders[,]" Id., ¶¶ 49–51;

- With no observed misconduct as justification, HPHS put Coach on the school's watchlist and he was required to be accompanied by a security escort while on school grounds, Id., ¶ 52;

- After Coach de-registered two children from HPHS and placed them in his sole primary residential custody, he requested removal from the watch list. The administration complied only because "the False Claim involved this second oldest son, who was now in his sole primary residential care." ¶¶ 53–57. However, "HPHS was furious that Coach was removing members of its student body and prominent student athletes" and escalated their conflict with him thereafter, Id., ¶ 56;

11

- After visiting HPHS by invitation and lawfully observing school security alongside a security guard, Coach was re-added to the watchlist as retaliate for his observing HPHS Security. No misconduct was alleged or observed, Id., ¶ 60; and

- Finally, the conduct at issue in this lawsuit.

Dean McCord, without any legitimate basis related to Coach's conduct, of the conduct of either Children of the Court or Judiciocracy, "demanded Coach not sit in the stands" and "stated he would have Coach removed by force for trespassing if he were to sit in the stands," while simultaneously had HPPD and HPHS security sit with his children to ensure he could neither see nor be seen by his children. Id., ¶¶ 122–126. Later in the game, McCord summoned three HPPD officers and Lane Linder to demanded Coach "leave the game or to be arrested for trespassing," based on justifications McCord admitted were baseless and while following McCord's earlier restrictions. Id., at ¶¶ 140–155. Linder declared "We know who you are," making clear the removal was identity-based and retaliatory. Id., ¶ 158. Moreover, after Coach left the premises under duress, "two of the three HPPD officers from earlier stood within 20 feet of Coach to ensure Coach did not exercise his Right of Return to Homecoming," monitoring him in an effort to quash his and Plaintiffs' efforts. Id., ¶¶ 177–178. These most recent incidents of harassment followed Coach's well publicized criticisms of HPHS's security failures which were published in multiple Lake County Gazette articles in February and March 2025.

The pattern of harassment, beginning in the fall of 2018, show exactly the kind of similar and ongoing constitutional violations that can and should give rise to liability for a municipal body's abject failure to train its employees. Here, Board of

12

Education of Township High School District 113 and its employees engaged in a concerted pattern of harassment designed to quash criticism and retaliate against a well-known activist for his clearly constitutionally protected activities.

c) **Plaintiffs Have Alleged that The City of Highland Park and its Police Department are Liable Under § 1983**

The First Amended Complaint alleges a widespread and well-settled custom of HPPD "deferring to school officials' requests to remove individuals from school events without conducting any independent assessment of whether probable cause exists for arrest or whether the removal violates individuals' constitutional rights." Am. Compl., ¶ 95. This custom operated as an instrument of unconstitutional suppression: on October 10, 2025, three HPPD officers appeared when summoned by McCord, threatened Coach with arrest for trespass despite his having purchased a ticket, engaged in no misconduct, and committing no act that would satisfy the elements of criminal trespass under Illinois law or support *any* reasonable officer finding probable cause for the same. Id., ¶ 96. HPPD and its officers then monitored Coach on the public sidewalk after he left school property, extending the constitutional violation beyond the venue itself. Id., at ¶ 100(d). Moreover, the HPPD has engaged in this rubber-stamping conduct at other school events and with other individuals. Id., at ¶ 97. That pattern is sufficient to sustain a custom-based Monell claim at the pleading stage.

Moreover, HPPD's participation in the Homecoming removal was independently motivated by retaliatory animus against Coach and Judiciocracy's protected newsgathering activities. The complaint identifies the precise protected

13

conduct, a FOIA litigation by a news media organization exposing HPPD's cover-up of police records tied to Steven Cohen and the specific causal connection: HPPD had just been compelled by a court to admit it had improperly withheld public records from Judiciocracy weeks before it appeared at McCord's side to threaten Coach with arrest. Am. Compl., ¶ 100(a). The temporal proximity alone is compelling; the excessive deployment of three officers to what amounted to a crowd management disagreement makes the retaliatory purpose plain. Id.

Finally, Plaintiffs have pleaded a failure-to-train theory and HPPD's deliberate indifference to the people's Constitutionally protected rights. HPPD has established no policies or training governing the First Amendment rights of media organizations at public events, the requirements of probable cause before threatening arrest at a ticketed event, or the prohibition on executing retaliatory exclusions at a fellow government entity's request. Id., at ¶ 98. Given the regularity with which HPPD is deployed to school events and the foreseeable constitutional tensions such deployments create, the absence of any such training reflects deliberate indifference to citizens' rights—precisely the "pattern of similar constitutional violations by untrained employees" that the Supreme Court required in Connick. See 563 U.S. at 62. Accordingly, the City of Highland Park and its Police Department are the moving force behind the deprivations Plaintiffs suffered.

### d) **Plaintiffs Have an Established Right to Due Process Which was Violated by *All* Defendants**

"The Fourteenth Amendment of the United States Constitution prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of

14

law.'" Murphy v. Rychlowski, 868 F.3d 561, 565 (7th Cir. 2017) (quoting U.S. Const. amend. XIV, § 1). "Due Process is a flexible concept, which varies with the particular situation. But, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. (internal citations and quotations omitted). "A procedural due process violation occurs when (1) conduct by someone acting under the color of state law; (2) deprives the plaintiff of a protected property interest; (3) without due process of law. Redd v. Nolan, 663 F.3d 287, 296 (7th Cir. 2011) (citing Germano v. Winnebago County, 403 F.3d 926, 927 (7th Cir. 2005)).

   **1) Defendants Board of Education of Township High School District 113, Dr. Chala Holland, Lane Linder, and Don McCord violated Plaintiffs' Due Process Rights**

Defendants Board of Education of Township High School District 113, Dr. Chala Holland, Lane Linder, and Don McCord assert that Plaintiff fails to state a due process claim because members of the public hold no constitutional right of access to school property. That argument fundamentally mischaracterizes the nature of Plaintiff's protected interests and ignores the retaliatory and pretextual basis for their removal — facts that must be accepted as true at this stage.

Coach's interest here is not that of a stranger seeking casual access to a public building. He is a custodial parent of two HPHS students, protected by court orders of the Illinois Unified Court System specifically guaranteeing his right to attend all of his children's school events without limitation -- orders HPHS knew about and was obligated to honor. Am. Compl., at ¶¶ 33–34. He purchased a ticket to an event open to any member of the general public and created, at minimum, a property interest in

15

attending. Am. Compl. ¶ 30. These independent sources of entitlement create a "legitimate claim of entitlement[.]" The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

Critically, Plaintiff's due process claim is not merely about the removal itself, it is about a removal executed in the complete absence of any legitimate basis, by officials who admitted the grounds were fabricated. Dean McCord stated two reasons for the Second Limitation of Rights: that Plaintiff's children had already left the game, and that a student MFG was uncomfortable. Am. Compl., at ¶ 146. But McCord admitted in writing he knew that accusation was false because Coach was merely attempting to say hello to his own children. Id. McCord further acknowledged that the removal was baseless, and that his own personal experience with Coach suggested the complaint by MFG was made falsely and for an improper purpose. Id., at ¶¶ 154–155. McCord even conceded that lifting the First Limitation of Rights — simply allowing Plaintiff to sit in the stands — would have resolved MFG's alleged discomfort without any removal whatsoever, she could have avoided him. Id., at ¶ 175.

This is precisely the type of capricious conduct the Due Process Clause is meant to prohibit. Due process is a flexible concept, but the fundamental requirement is the opportunity to be heard in a meaningful way. Murphy, 868 F.3d at 565. Plaintiffs were not afforded a meaningful opportunity or any opportunity to be heard; they were removed under threat of arrest, based on admittedly false allegations, without any hearing, any neutral review, or any procedural protection. In fact, it was the

16

Defendant's own behavior (the First Limitation) that gave rise as the pretextual justification for the removal (the Second Limitation).

Moreover, District 113, Linder, and McCord actively interfered with Coach's parental rights. Their interference with Coach's relationship with his custodial child is precisely the type of conduct **directed** at the parent-child relationship, not some incidental conduct. See Russ v. Watts, 414 F.3d 783, 788 (7th Cir. 2005). There is no question that this was not some incidental impact of the Defendants' conduct but, was apert of the retaliatory efforts take as a result of Coach's criticisms and Plaintiffs advocacy.

### 2) **The City of Highland Park, its Police Department, and its Officers violated Plaintiffs' Due Process Rights**

The City and Police Department Defendants argue that the purchase of a $6 ticket confers no more than a "unilateral expectation" insufficient to trigger due process protections, but that argument is both incomplete and inaccurate.

Protected property interests need not arise from the ticket alone and, as described above, Plaintiffs' 'legitimate claim of entitlement' flows from three independent sources. First, Coach is a custodial parent of multiple HPHS students – rights protected by Cook County Circuit Court orders guaranteeing his attendance at their school events, orders the school knew and acknowledged. Am. Compl., at ¶¶ 33–34. Second, Coach attended Homecoming in his capacity as a media executive and representative of Judiciocracy and Children of the Court, exercising First Amendment rights to gather news and engage in advocacy at a publicly accessible

17

school event.[1]  Id., at ¶¶ 101–105.  Third, the event was an open-admission public event sold to the general public, not a restricted school-only gathering.  These overlapping sources of entitlement distinguish this case from the authority the City cites, which concerned members of the public with no independent basis for access beyond the event itself.

More fundamentally, the removal here was capricious and baseless.  McCord's stated justifications are directly undercut by his own admissions.  McCord acknowledged that MFG had initiated the confrontation, had behaved inappropriately, and that Coach had not engaged in any conduct toward MFG after she walked away.  Am. Compl. ¶ 175.  McCord admitted the allegation that Coach yelled his child's name at the game was baseless and that MFG's complaint was likely made falsely.  Id., at ¶¶ 154–155.  McCord himself acknowledged that simply lifting his own First Limitation of Rights — allowing Coach to sit in the stands — would have resolved the claimed discomfort, yet he refused.  Linder, who had been personally named in Plaintiff's public media criticism in February and March 2025, told Coach point-blank: "We know who you are"  Id., at ¶¶ 157-158.  Three police officers were summoned — an extraordinary law enforcement response to a parent watching a football game — and HPPD officers continued to monitor Coach even after he had left school property.  Id., at 175, 178.  After the confrontation, the ticket refund McCord promised was never returned and McCord's promise of a Right of Return was immediately violated.  Id., at ¶¶ 182, 185.  Taken together, these allegations establish

---

1. A citizen's First Amendment right to be present at a designated public forum is itself a protected liberty interest that cannot be extinguished without process.

that the removal was not a reasonable exercise of administrative discretion but an arbitrary, retaliatory act — exactly the 'arbitrary and irrational conduct' that fails any due process standard.

When the admitted motive is retaliation for protected First Amendment activity -- Plaintiffs' public criticism of HPHS security and his FOIA litigation against HPPD --- due process concerns are independently triggered. The cases Defendants rely upon involve generic members of the public removed for facially legitimate reasons; none addresses a custodial parent removed in retaliation for protected speech under a pretext its architects openly admitted was false.

### e) <u>Injunctive Relief Is Appropriate Because the Threat of Future Retaliation Looms</u>

Injunctive relief is not merely appropriate here, **it is necessary**. The threat of continued constitutional harm is not speculative; it is confirmed by Defendants' own post-incident conduct. This Court already entered an Agreed Preliminary Injunction Order on December 4, 2025, recognizing the credible threat of ongoing injury. Yet even that Order did not stop the retaliation. After the injunction issued, HPHS sought, through counsel, to limit Coach's ability to communicate with his children's coaches about public record matters—an act the complaint characterizes as a direct continuation of the same retaliatory pattern that produced the Homecoming violations. <u>Am. Compl.</u>, at ¶ 185.

The need for permanent injunctive relief is further demonstrated by Defendants' refusal to adopt any corrective policy. The watch list that was used to target Coach has operated without written standards, without procedural safeguards,

19

and without any oversight mechanism for at least seven years. Am. Compl., ¶¶ 61–66. Defendants have demonstrated both the willingness to deploy pretextual justifications and the institutional capacity to coordinate between HPHS and HPPD to enforce those pretexts. Without relief, Judiciocracy faces continued obstruction of its investigative newsgathering, Children of the Court faces continued interference with its court-ordered mission, and Coach faces ongoing suppression of advocacy that lies at the core of the First Amendment. As the Seventh Circuit has recognized, retaliation against protected speech is unconstitutional whether or not the retaliatory act itself constitutes an independent violation. Holleman, 951 F.3d at 878. Where, as here, Defendants have shown no indication of reform and every indication of continued hostility, injunctive relief is the only remedy adequate to protect Plaintiffs' rights into the future.

**f) Plaintiffs' Claims for Violation of Illinois Constitutional Protections**

Plaintiffs' Complaint alleged claims resultant from Defendants' violation of the Illinois Constitution. Defendants move to dismiss those claims arguing that they are barred by the Eleventh Amendment and the Illinois State Lawsuit Sovereign Immunity Act. While Plaintiffs disagree with Defendants' analysis, they will voluntarily dismiss those claims for violations of Illinois Constitutional protections.

CONCLUSION

For the reasons stated above, the Court should deny Defendants Board of Education of Township High School District 113, Dr. Chala Holland, Don McCord and Lane Linder's Motion to Dismiss Plaintiff's Amended Complain; and Defendant City of Highland Park and Chief Louis Jogmen's Motion to Dismiss Plaintiffs' First Amended Complaint, force Defendants to answer and permit Plaintiffs to bring their claims to issue.

Dated: April 6, 2026                    Respectfully Submitted:

By: /s/ *Adam Florek*

Adam Florek
Florek Law, LLC
11 Knollwood Dr.
North Caldwell, New Jersey 07006
Tel: (929) 229-2268
E-mail: aflorek@florekllc.com

Antonio Ernesto Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, PR 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

Ryan M. Cleys
ARDC #6326726
115 East Irving Park Rd. #936
Streamwood, IL 60107
(847) 217-7170
Fax (847) 728-8003
Rmcleys@gmail.com

Edward "Coach" Weinhaus, Esq.

21

**LegalSolved, LLC**
11500 Olive Blvd., Suite 133
Saint Louis, Missouri 63141-7126
Tele: (314) 580-9580
E-mail: eaweinhaus@gmail.com

22

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document with the clerk of the Court using the CM/ECF filing system, which should further distribute a true and accurate copy of the foregoing to all counsel of record.


By: ___*/s/Adam Florek*___