**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDWARD "COACH" WEINHAUS,
CHILDREN OF THE COURT, and
JUDICIOCRACY, LLC,
          Plaintiffs,
      v.

BOARD OF EDUCATION OF TOWNSHIP
HIGH SCHOOL DISTRICT 113, et. al.,
          Defendants.
=

Case No.: 1:25-cv-14662

Judge Jorge L. Alonso

**DEFENDANTS BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL
DISTRICT 113, DR. CHALA HOLLAND, DON MCCORD, AND LANE LINDER'S
REPLY IN SUPPORT OF IT'S MOTION TO DISMISS**

Plaintiffs Edward Weinhaus, Children of the Court, and Judiciocracy, LLC, fail to refute the

arguments raised by Defendants, the Board of Education of Township High School District 113,

Dr. Chala Holland, Don McCord, and Lane Linder, in the motion to dismiss and supporting

memorandum, and therefore Defendants respectfully ask this Court to dismiss Plaintiffs' Amended

Complaint in its entirety, with prejudice, under Federal Rule of Civil Procedure 12(b)(6).

**I. Argument**

    **A. Official Capacity Claims Should Be Dismissed**

Plaintiffs do not refute that the official capacity claims against Dr. Holland, Dean Don

McCord, and Lane Linder should be dismissed as duplicative of the claims against the Board of

Education itself. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Defendants respectfully

ask the Court to dismiss the official capacity claims for the reasons outlined in the initial brief.

    **B. Plaintiffs Have Not Established *Monell* Liability**

Plaintiffs fail to meet the requirements to establish *Monell* liability under any proposed theory.

In the Response, Plaintiffs mainly focus on a failure-to-train theory and argue that Dr. Holland had final policy-making authority. Resp. Neither argument is persuasive. To establish *Monell* liability under a failure-to-train theory, Plaintiffs must demonstrate that the Board failed to train its employees in a manner that evidences deliberate indifference to their constitutional rights. *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). Deliberate indifference is shown when "in light of the duties assigned to the specific … employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that policymakers can be deemed deliberately indifferent to the need. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

The Amended Complaint alleges two constitutional violations: First Amendment retaliation and a denial of due process. To avoid dismissal, any pattern that Plaintiffs attempt to establish must be of First Amendment retaliation and a denial of due process. Plaintiffs point to the following allegations: the filing of a DCFS report against him that was ultimately deemed unfounded, a purported altercation with staff that Plaintiffs tie to the unfounded DCFS report, being placed on a "watchlist," Weinhaus' own decision to deregister and reregister his children in the District, and being placed on a "watchlist" again for questioning the security of the school. Resp. 11. Plaintiffs label these incidents as "harassment," and fail to explain how they establish a pattern of constitutional violations. Generalized grievances with how a parent is treated or labeling certain actions as "harassment" does not rise to the level of a constitutional violation, and do not support a pattern of First Amendment retaliation or due process violations. Further, establishing *Monell* liability under a failure to train theory requires more than pointing to one alleged instance of a constitutional violation (e.g., removal from the football game); there must be a pattern of deliberate indifference. *See S.J. v. Persps. Charter Sch.*, 685 F. Supp. 2d 847, 858 (N.D. Ill. 2010).

Plaintiffs do not adequately allege a pattern of constitutional violations, as they do not plead any history of First Amendment retaliation or due process violations that might have put the Board on notice of the need for more or different training for District personnel.

Next, Plaintiffs attempt to argue that Dr. Holland acted as a final policymaker. Any allegation by Plaintiffs that Dr. Holland is a "final policymaker" for the Board because she "monitored the events of October 10," Resp. 10 (citing Am. Compl. ¶ 12), is an unsupported legal conclusion that is entitled to no weight, *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). In Illinois, "only the board of education and those who it delegates to act on its behalf have the final policymaking authority," *Richardson v. Bd. of Educ. of Elgin Sch. Dist.*, No. 24-CV-8243, 2025 WL 1707801, at *3 (N.D. Ill. June 18, 2025) (citing *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998)). The allegation that Dr. Holland monitored the events of the football game or otherwise received updates about Weinhaus does not create final policymaking authority. *Richardson*, 2025 WL 1707801 at *3 ("Policymaking authority is not simply the power to make decisions; it is broader and must encompass the power to speak for the local government on official policy.").

The Seventh Circuit has rejected "bare allegations" like those brought by Plaintiffs, and affirmed a district court's dismissal of § 1983 claims where the plaintiff failed to establish how the defendants enjoyed final decision-making authority under relevant state law. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001). In *Horwitz*, there was no basis to conclude that the superintendent, principal, or even the president of the board of education were final policymakers, as "nothing in the [Illinois] School Code allows us to infer that a superintendent or principal has been delegated policymaking authority . . . [or] that the president of a school board has final policymaking authority." *Id.* The Seventh Circuit confirmed that a plaintiff must plead

3

more than his or her "own bare allegations" that the superintendent and school employees were "involved in a conspiracy" to "silence her," as this was not enough to establish final policy-making authority. *Id.* The allegations at issue here are analogous: Plaintiffs allege that Dr. Holland (who was not in attendance) monitored Weinhaus by receiving updates from Dean McCord and therefore acted as the final policymaker for the Board of Education. Am Compl. ¶¶ 12, 176. Plaintiffs respond that Dr. Holland "directed and ratified the entire sequence of events" without any support or legal basis. Resp. 9. These statements are nothing more than "bare allegations" and inappropriate legal conclusions that are incapable of surviving a motion to dismiss. *Horwitz*, 260 F.3d at 619 (citing the lower court's opinion that the plaintiff "did not even [have] 'bare allegations' from which to string together an argument that the individual Defendants enjoyed final decision-making authority"); *see also Baker v. Cypress Illinois Sch. Dist. No. 64*, No. 21-CV-821-DWD, 2022 WL 425336, at *3 (S.D. Ill. Feb. 11, 2022) (dismissing § 1983 when the plaintiff failed to plead any basis on which the superintendent had final policymaking authority related to the termination). And because there is no respondent superior for § 1983 claims, *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019), Plaintiffs fail to allege a viable theory to establish *Monell* liability against the Board of Education.

To the extent Plaintiffs are arguing that the conduct was a widespread practice by stating that "the *custom* was applied against Coach on multiple occasions demonstrating that it is not the result of individual employee misconduct but rather reflects the District's established practice," Resp. 10, Plaintiffs have failed to respond to the Defendants' argument that a widespread custom requires a showing that the action occurred to others, not just Weinhaus, *Big Woods BBQ LLC v. Moore*, No. 24 CV 11776, 2025 WL 1755727, at *3 (N.D. Ill. June 25, 2025). In the Response, Plaintiffs write that "Defendants have leveraged the watch list to restrict access to school events for other

4

parents and community members," and cite to ¶¶ 64–66 of the pleading. Resp. 10. A review of this portion of the Amended Complaint demonstrates that there are only unsupported statements that "multiple individuals" have been affected. Am. Compl ¶¶ 64–66. In determining a motion to dismiss, a court need not give weight to unsupported statements. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). In the context of a *Monell* claim, plaintiffs must plead more than a "this single conclusory allegation" to avoid dismissal. *Hersberger v. Johnson Mem'l Hosp.*, No. 1:25-CV-01250-TWP-MKK, 2026 WL 759007, at *5 (S.D. Ind. Mar. 17, 2026). Plaintiffs again ignore that the "customs" must relate to the constitutional violations that Plaintiffs allege here and not simply include a list of grievances against Defendants. *See e.g.*, *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (finding no widespread policy when alleged incidents did not include "the constitutional violation at the heart of [the] complaint"). The mere existence of a "watch list" in itself is not a constitutional violation, even if other individuals were included on such a list. Plaintiffs' Response does not refute the dismissal arguments, and the pleading does not include enough to support *Monell* liability. The 42 U.S.C. § 1983 claims should be dismissed.

### C. Plaintiffs Cannot Establish Elements of First Amendment Retaliation

Plaintiffs fail to refute any argument related to their First Amendment rights, and do not explain how the allegations meet the necessary elements and should survive dismissal. To start, Plaintiffs' Response, like the Amended Complaint, focuses only on the constitutionally protected activities in which Weinhaus purportedly engaged. Resp. 7. Judiciocracy and Children of the Court have not pleaded any protected activity. It does not matter that their "attendance . . . was squarely in furtherance of protected activities" if they fail to plead that they engaged in any prior protected speech that prompted retaliation from any of the Defemdants. Resp. 7. Further, nothing in the Amended Complaint suggests that any of the Defendants were aware that Weinhaus was attending the game in any capacity other than an ordinary spectator, much less that he was doing so on behalf

of Judiciocracy or Children of the Court. Any claim for First Amendment retaliation brought by them should be dismissed. *See Hodges v. Valley View Cmty. Unit Sch. Dist. 356U*, No. 11 C 8418, 2012 WL 6677771, at *1 (N.D. Ill. Dec. 21, 2012) (dismissing First Amendment retaliation claim where the speech was not by the plaintiff asserting the claim).

Weinhaus' own claims also fail. Plaintiffs fail to establish what adverse action was taken against him, or how that action was connected to his protected activities. *See Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) ("To prevail on their § 1983 retaliation claim, the parents need to prove (1) that they were engaged in constitutionally protected speech; (2) that public officials took adverse actions against them; and (3) that the adverse actions were motivated at least in part as a response to the plaintiffs' protected speech."). Plaintiffs focus on whether the football game was a limited public forum and if the conduct at issue chilled First Amendment activities. Resp. 8–9. They fail to rebut the arguments brought by Defendants in the initial brief.

In the First Amendment retaliation context, the Seventh Circuit applies "an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Case law establishes that actions taken while "respond[ing] to disruptive parents and spectators as a matter of course," are generally not enough to establish a claim of First Amendment retaliation. *Springer*, 518 F.3d at 485. This type of generic dispute does not rise to the level of a constitutional violation, as Plaintiff was asked to watch the football in a different location and then to leave in the third quarter after a student complained about him. Am. Compl. ¶¶ 108, 137. A mere inconvenience does not rise to the level of actionable conduct. *See Hoffman v. DeWitt Cnty., Illinois*, No. 15-CV-03026, 2018 WL 3758566, at *11 (C.D. Ill. Aug. 8, 2018).

Plaintiffs have failed to plead an adverse action. They cite *Cassell v. Snyders* in an effort to rebut the authority included by Defendants; however, that case discusses whether a preliminary injunctive was appropriate for First Amendment religious freedom claim related to the COVID-19 pandemic. *See* Resp. 9 (citing 990 F.3d 539, 545–46 (7th Cir. 2021)). Not only is the case factually irrelevant, but the court also discussed how the plaintiffs no longer faced any live threat of enforcement, which cut against whether the threats could chill protected activity. *Cassell*, 990 F.3d at 546. Here, Plaintiff is able to attend events at the high school as he has, without issue, for years. Am. Compl. ¶ 162. "[W]hen the asserted injury is truly minimal," courts can resolve claims like this as a matter of law. *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020).

Lastly, the Amended Complaint also includes the reason why Weinhaus was asked to first remain away from the stands, and later to leave the football game: his presence made a student feel uncomfortable. Am. Compl. ¶¶ 110, 146. Plaintiffs cannot and have not pleaded that the events at the football are connected to Weinhaus' alleged protected activity, which occurred months before, when the incident with the student occurred only moments before Dean McCord approached him. There is no reasonable inference that any conduct by Defendants was motivated in response by a few comments made over six months before. Counts I and II should be dismissed as Plaintiffs have not met the elements of a First Amendment retaliation claim.

### D. Plaintiffs' Due Process Claim Fails Because They Were Not Deprived of Any Constitutionally Protected Right

Plaintiffs fail to identify any constitutionally protected right, which is necessary to assert either a substantive or procedural due process claim. *See Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). The argument is that the "due process claim is not merely about the removal itself, it is about a removal executed in the complete absence of any legitimate basis." Resp. 16. In short, they put forth that the removal did not allow an opportunity to be heard. Resp. 15–17.

To start, the pleading itself provides a reason that demonstrates that any removal was not in the complete absence of a legitimate basis—Weinhaus acknowledges that a female student told him he was being "creepy" and complained about him. Am. Compl. ¶¶ 110, 146. Further, Plaintiffs' argument does not identify what protected interest they had in attending the high school football game. Many of Plaintiffs' arguments are largely irrelevant and focus on whether the removal met the requirements of due process. However, without a constitutionally protected interest, arguing that the removal was unfair cannot save Counts III and IV from dismissal.

Case law establishes that Plaintiffs had no protected interest in remaining on school property, even if Weinhaus is a custodial parent of two students, and even if the event was open to the public. *See Schuessler v. Fort Madison Comm. Sch. Dist.*, No. 317CV00039, 2018 WL 10345327 (S.D. Iowa Mar. 23, 2018) (analyzing case law from various circuits and concluding that a father who was banned from school events could not state a claim for the violation of due process); *J.S. v. Manchester Cmty. Schs. Corp.*, No. 3:19-CV-421, 2019 WL 7283285, at *3 (N.D. Ind. Dec. 23, 2019) (dismissing procedural and substantive due process claims against a school district because it was not enough to allege a right "to attend certain events that are open to all people of the community"). If Plaintiffs are arguing that they were entitled to a certain process in removal, the case law is just as clear—there is no "pre-expulsion" process owed, as school districts possess a wide authority to administer school property. *Schuessler*, 2018 WL 10345327, at *9 (citations omitted). Plaintiffs fail to cite any case law that refutes Defendants' arguments for dismissal.

The cases that Plaintiffs cite are not relevant authority, and instead relate to protected interests that arise as a result of employment, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), or as a result of being placed on a sex offender registry (with the associated legal restrictions), *Murphy v. Rychlowski*, 868 F.3d 561, 565 (7th Cir. 2017). *See* Resp. 16. While the

general principles of these cases may provide insight into the concept of due process, neither explains how Plaintiffs were entitled to a constitutionally protected right to attend a high school football game. Plaintiffs fail to engage Defendants' arguments or identify any protected interest, which is fatal to their due process claims.

Plaintiffs fail to include any support for the vague assertion that the purchase of a $6 ticket entitles them to due process protections, Resp. 15–16, or to otherwise refute the authority cited by Defendants as to how the purchase of a ticket *does not* create such right. *See Sims v. Jones*, No. 84 C 4662, 1985 WL 1536, at *2 (N.D. Ill. Feb. 7, 1985) (holding that the purchase of a ticket from the state lottery system did not create a property right sufficient to bring a due process claim).

### E. Plaintiffs Do Not Allege Any Interference With Weinhaus' Parental Rights

To avoid dismissal, Plaintiffs must point to specific factual support demonstrating that Defendants aimed to interfere with Weinhaus' relationship with his children. *See Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) (writing that absent "action specifically aimed at interfering with that relationship," there is no violation of parental rights). In response to this argument, Plaintiffs broadly assert that the interference was directed at this relationship because Defendants' conduct was a part "of the retaliatory efforts" for "Coach's criticisms and Plaintiffs' advocacy." Resp. 17. This fails to connect any interference by Defendants to Weinhaus' parent-child relationship and provides a completely different basis unrelated to his role as a parent. In other words, Plaintiffs' response demonstrates that any interference with his parental rights was merely an incidental result of the Defendants alleged retaliatory actions for his "criticisms" and "advocacy." Similarly, Plaintiffs ignore Defendants' contention that the allegations generally fall far short of any interference with a parental relationship; at most, Coach was delayed from greeting his children for a few minutes. Am. Compl. ¶ 249. Nothing in the Complaint suggests that this

slight delay in any way interfered with Weinhaus's relationship with his children. Without any allegations as to how this "interference" was anything more than a brief, incidental restriction, or how it directed at the parent-child relationship, Plaintiffs fail to allege any constitutional violation.

### F. Plaintiffs Cannot Maintain Their Request for Injunctive Relief

Plaintiffs lack standing to seek injunctive relief because they do not plausibly allege any actual or imminent threat of future injury traceable to the Board. Nothing in the Response changes this. Resp. 19–20. Weinhaus has attended numerous school-sponsored events without issue and has been expressly told he may attend future events. The football-game incident arose from unique, isolated circumstances unlikely to recur. *See* Am. Compl. ¶ 162 ("Dean McCord assented and stated further that Coach would be allowed to 'come back.'"). Plaintiffs cannot amend their pleading by attempting to allege other instances in response to a motion to dismiss. *See* Resp. 19; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). A single past incident (e.g., removal from one football game), without ongoing or imminent harm, is insufficient to establish standing for prospective injunctive relief. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). As such, the Court should deny this baseless request.

### G. Plaintiffs Voluntarily Dismiss State Law Claims

Plaintiffs voluntarily dismiss the state constitutional claims contained in Counts I, II, and III. Resp. 20. Defendants respectfully request the Court dismiss these state constitutional claims.

## II. Conclusion

For the reasons set forth above and in Defendants' Motion to Dismiss and memorandum, Defendants the Board of Education of Township High School District 113, Dr. Chala Holland, Don McCord, and Lane Linder respectfully ask the Court to dismiss Plaintiffs' Amended Complaint.

Dated: April 16, 2026

Respectfully submitted,

**BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113, DR. CHALA HOLLAND, DON MCCORD, and LANE LINDER**, Defendants.

By: */s/ William R. Pokorny*
   One of their attorneys

William R. Pokorny
wrp@franczek.com
Lindsay A. Hill
lah@franczek.com
Franczek P.C.
300 S. Wacker Dr., Suite 3400
Chicago, IL 60606
(312) 986-0300

11

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 16, 2026, he caused a copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS** to be e-filed using the CM/ECF e-filing system which will serve all parties of records, and served via electronic mail on all parties of record, namely:

> Adam Florek
> Florek Law, LLC
> 11 Knollwood Dr.
> North Caldwell, New Jersey 07006
> aflorek@florekllc.com
>
> Ryan M. Cleys
> 115 East Irving Park Rd., #936
> Streamwood, IL 60107
> Rmcleys@gmail.com
>
> Edward "Coach" Weinhaus, Esq.
> Only as to the Entity Plaintiffs
> LegalSolved, LLC, FOIASolved division
> 11500 Olive Blvd., Suite 133
> Saint Louis, Missouri 63141-7126
> eaweinhaus@gmail.com

*/s/ William R. Pokorny*

12