**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Edward Weinhaus, Children of the Court, and Judiciocracy LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 25 C 14662 |
| v. | ) ) | Judge Jorge L. Alonso |
| Board of Education of Township High School District 113, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edward Weinhaus was told by school officials and the local police that he would

be arrested for trespassing if he did not leave a high school football game. In response, Weinhaus

filed this lawsuit. Defendants move to dismiss and, for the reasons stated below, Defendants'

motions are granted.

**Legal Standard**

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be

granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must provide "a

short and plain statement of the claim" and must "contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78

(2009) (citations omitted). Facial plausibility exists when the plaintiff pleads factual content that

"allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. In deciding a motion to dismiss, the Court "accept[s] the well-pleaded facts in

the complaint as true and draw[s] reasonable inferences in the plaintiff's favor." *Esco v. City of

Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

**Background**

Plaintiff Edward Weinhaus is the founder and executive director of Plaintiff Children of the Court. R. 29 ¶ 7. He is also the founder and chief executive officer of Plaintiff Judiciocracy. *Id.* ¶¶ 6, 9. He has five children, three who previously attended Highland Park High School ("HPHS"), and two who currently attend HPHS. *Id.* ¶ 33.

In October 2025, Weinhaus purchased a ticket for $6 and attended the HPHS Homecoming football game. *Id.* ¶ 26. As alleged, Weinhaus attended the game individually and in his capacity as a representative of Children of the Court and Judiciocracy. *Id.* ¶ 101. Though his children also attended, Weinhaus did not sit with his children when he arrived. *See id.* ¶¶ 106–07, 137. During the second quarter, a female student accused Weinhaus of being "creepy" and reported Weinhaus to HPHS Dean of Students Don McCord. *Id.* ¶¶ 110, 114–15. McCord then approached Weinhaus and asked him to leave the football game, but Weinhaus refused to leave. *Id.* ¶¶ 117–20. McCord then "demanded" that Weinhaus not sit in the stands and Weinhaus complied. *Id.* ¶¶ 122, 130. The female student, however, continued making complaints about Weinhaus to security. *Id.* ¶ 129. As such, McCord approached Weinhaus during the third quarter along with HPHS's Head of Security Lane Linder and three Highland Park police officers. *Id.* ¶ 140. By this point, much of the crowd had left, including Weinhaus's children. *Id.* ¶ 137. The female student, however, remained at the game. *Id.* ¶ 141. McCord "demanded" that Weinhaus leave the game or be arrested for trespassing. *Id.* ¶ 142. McCord stated that Weinhaus needed to leave because (1) Weinhaus's children had left and (2) a female student was uncomfortable with Weinhaus's presence because Weinhaus was "following her." *Id.* ¶ 146. Weinhaus alleges that he wasn't following the girl but that he was trying to say hello to his children. *Id.* McCord ultimately escorted Weinhaus out of the game. *Id.* ¶ 173. McCord informed Weinhaus that he would be able to return to future HPHS events. *Id.* ¶ 164.

Plaintiffs allege that Defendants removed Weinhaus from the game to retaliate against Weinhaus for having engaged in the following activities. First, in 2018, Weinhaus's children's stepfather falsely reported Weinhaus to HPHS and, in response, HPHS filed a report with DCFS. *Id.* ¶ 46. The report was deemed "unfounded" by DCFS and added to a "False Claims Database." *Id.* ¶ 47. Plaintiffs claim that Defendants removed Weinhaus from the game "to get even with him for ensuring that the False Claim was kept in the Illinois False Claims Database." *Id.* ¶ 199.

Second, in February 2025, Weinhaus was interviewed in a local newspaper regarding a security incident at HPHS. *Id.* ¶¶ 76–77. Weinhaus told the newspaper that (1) he had forewarned HPHS about its security failings; (2) that HPHS has "gone from needing far better security personnel to far better lawyers"; and (3) that "accountability at schools is something for parents to take into their own hands." *Id.* ¶¶ 79–81. Plaintiffs claim that Defendants removed Weinhaus from the game to "retaliate against [him] for speaking to the media" as described above. *Id.* ¶ 199.

Following the football game, Plaintiffs filed this lawsuit. R. 1-1. Defendants moved to dismiss at R. 17 and R. 21, and rather than responding to those motions, Plaintiffs filed a First Amended Complaint at R. 29. Plaintiffs allege five counts as follows:

In Counts I and II, Plaintiffs allege that when Defendants barred Weinhaus from sitting in the stands (Count I) and removed him from the game (Count II), Defendants acted in retaliation for the above two actions and thus violated Plaintiffs' free speech rights. R. 29 ¶¶ 205–226. In Counts III and IV, Plaintiffs allege that when Defendants barred Weinhaus from sitting in the stands (Count III) and removed him from the game (Count IV), Defendants violated Plaintiffs' due process rights. *Id.* ¶¶ 227–244. Finally, in Count V, Weinhaus alleges that when Defendants barred him from sitting in the stands, they prevented him from saying hello to his children (who were sitting in the stands), and as such interfered with Weinhaus's parental rights. *Id.* ¶¶ 245–265.

3

Defendants the Board of Education of Township High School District 113 (the school district for HPHS), Dr. Chala Holland (the Superintendent of District 113), Don McCord, and Lane Linder move to dismiss at R. 30. Defendants City of Highland Park and Louis Jogmen (Police Chief for the Highland Park Police Department) move to dismiss at R. 33. For the reasons stated below, Defendants' motions are granted.

## Discussion

### I. Free Speech

In Counts I and II, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging that Defendants removed Weinhaus from the game to retaliate against Plaintiffs for exercising free speech rights under the First Amendment.[1] "To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted).

Regarding the first element, Plaintiffs allege that Weinhaus engaged in activity protected by the First Amendment for ensuring that the unfounded DCFS report was kept in a False Claims Database and for criticizing HPHS in a local newspaper. Accepting the allegations in the complaint as true and drawing reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently alleged that Weinhaus engaged in a protected activity when he spoke with the newspaper. But, critically, only Weinhaus engaged in this activity and Plaintiffs do not allege that Children of the Court engaged in it, nor do they allege that Judiciocracy engaged in it. As such, Children of the Court and Judiciocracy are dismissed from Counts I and II.

---

[1] Counts I and II also allege that Defendants violated Plaintiffs' free speech rights under the Illinois Constitution. But Plaintiffs have since agreed to dismiss the Illinois claims. R. 40 at 23.

Regarding the second element, the Seventh Circuit applies an "objective test" of "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citations omitted). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, [courts] can resolve the issue as a matter of law." *Id.* at 647. "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

Here, Weinhaus was escorted out of a high school football game after his children had already left the stadium. McCord also informed Weinhaus that he could return to future HPHS events. The Court finds as a matter of law that the asserted injury is truly minimal and not sufficiently severe so as to deter a person of ordinary firmness from continuing to assert his First Amendment rights. Counts I and II are thus dismissed.

## II. Due Process

In Counts III and IV, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging that Weinhaus had a due process right under the Fourteenth Amendment to access and freely move around during the football game.[2] In Count V, Weinhaus brings a claim under 42 U.S.C. § 1983 alleging that Defendants interfered with his parental rights to say hello to his children. To the extent Weinhaus asserts interference with his parental rights, this claim also falls under the Due Process Clause of the Fourteenth Amendment. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1018 (7th Cir. 2000) ("The Supreme Court has long recognized as a component of substantive due process the right to familial relations.").

---

[2] Counts III and IV also allege that Defendants violated Plaintiffs' due process rights under the Illinois Constitution. But Plaintiffs have since agreed to dismiss the Illinois claims. R. 40 at 23.

Regarding Counts III and IV, "members of the public do not possess a constitutionally protected right to access school property." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 755 (7th Cir. 2012). Plaintiffs thus cannot maintain a procedural due process claim. *Id.* at 752 (procedural due process requires that "the plaintiff was deprived of a protected interest"). Nor can Plaintiffs maintain a substantive due process claim. *See Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) (substantive due process requires that "the government violated a fundamental right or liberty"). Counts III and IV are thus dismissed.

Regarding Count V, the "[p]rotection of familial relations is indeed a fundamental right, but a brief separation of a parent from her child does not deprive the parent of her right to raise children." *Bloom v. Palos Heights Police Dep't*, 840 F. Supp. 2d 1059, 1065 (N.D. Ill. 2012). *See Hanson v. Dane Cnty., Wis.*, 608 F.3d 335, 339 (7th Cir. 2010) (no violation of due process where police separated children from their father for a "few minutes [of] questioning"); *See Tenenbaum v. Williams*, 193 F.3d 581, 601 (2d Cir. 1999) (Where a pre-school student was taken to the hospital for a medical exam without her parents' consent and "was returned to her parents hours later," the "temporary separation of Sarah from her parents did not result in the [parents'] wholesale relinquishment of their right to raise Sarah" because the "interference was not severe enough to constitute a violation of their substantive due-process rights.").

Here, Defendants prevented Weinhaus from sitting in the stands during the second quarter of the football game and as a result, Weinhaus was unable to sit with his children during this brief period of time.[3] The Court finds as a matter of law that such a brief separation was not severe enough to constitute a violation of Weinhaus' substantive due process rights. Count V is thus dismissed.

---

[3] During the first quarter, Weinhaus chose of his own volition to sit separately from the children. And, by the third quarter, Weinhaus's children had left the stadium.

### III.    Additional Claims

The FAC sets forth only the five counts identified above. Despite that, Plaintiffs assert additional claims in their response brief to the motions to dismiss. First, Plaintiffs argue that they established a *Monell* claim because Defendants have a "widespread and well-settled custom of restricting access to school events based on criticism of school officials rather than objective misconduct of genuine safety concerns . . . [and this] pattern, spanning seven years and multiple incidents, constitutes precisely the widespread custom that carries the force of law under *Monell*." R. 40 at 13. Second, Plaintiffs argue that certain Defendants were "deliberately indifferent" to the "pattern of harassment designed to quash criticism and retaliate against [Weinhaus] for his clearly constitutionally protected activities." *Id.* at 13–16.

But the Court need not reach these arguments. To prevail on either a *Monell* claim or a deliberate indifference claim, a plaintiff must first establish an underlying constitutional violation. *See Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."); *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). Because Plaintiffs have not established an underlying constitutional violation, the *Monell* claim and the deliberate indifference claim are dismissed.

7

**Conclusion**

Defendants' motions [30] [33] to dismiss are granted. Because this is Plaintiffs' second attempt to respond to Defendants' motions to dismiss and because Plaintiffs still fail to state a claim, the case is dismissed with prejudice. Civil case terminated.

**SO ORDERED.**                                            **ENTERED: June 25, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**

8